KATHY A. WOOD AND EVALYN GONZALES, PLAINTIFFS v. NORTH CAROLINA STATE UNIVERSITY, DEFENDANT

No. COA00-1129

(Filed 4 December 2001)

**Immunity— sovereign—waiver—liability insurance—doctrine of quasi-estoppel—ministerial duty exception**

The trial court erred in a sexual harassment case, based on defendant university's failure to take disciplinary action against a professor, by granting plaintiff students' motion to strike defendant's defense of sovereign immunity and by denying defendant's motion for summary judgment, because: (1) the State does not waive sovereign immunity through the purchase of liability insurance in the same manner as the city or county level of government; (2) jurisdiction over tort claims against the State and its agencies remains exclusively with the Industrial Commission under N.C.G.S. § 143-291(a) even if the State has purchased liability insurance since the insurance reduces the payment obligation of the State and does not further waive immunity; (3) the insurance policy was purchased pursuant to N.C.G.S. § 58-32-15, which expressly provides that the purchase of such insurance does not constitute a waiver of sovereign immunity; (4) the university is not barred from arguing its sovereign immunity defense by the doctrine of quasi-estoppel since it is an equitable doctrine and the law is clear that any waiver of the State's sovereign immunity must be by action of the General Assembly; and (5) the university is not barred from arguing its sovereign immunity defense by the ministerial duty exception even though the university had a written sexual harassment policy that made it mandatory for the university to take disciplinary action against the professor.

Appeal by defendant from order entered 15 August 2000 by Judge Abraham Penn Jones in Wake County Superior Court. Heard in the Court of Appeals 22 August 2001.

*Kennedy, Kennedy, Kennedy and Kennedy, L.L.P., by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff-appellees.*

*Attorney General Roy Cooper, by Thomas O. Lawton III, Assistant Attorney General, for defendant-appellant.*

HUDSON, Judge.

North Carolina State University ("NCSU") appeals an order granting the plaintiffs' motion to strike its defense of sovereign immunity and denying its motion to dismiss, which the court converted to a motion for summary judgment, on the ground of sovereign immunity. Because we hold that to the extent NCSU's sovereign immunity was waived, jurisdiction is in the Industrial Commission, we vacate the order and remand this action to the superior court for dismissal.

I.

The facts relevant to this appeal are not in dispute. Plaintiffs Kathy A. Wood and Evalyn Gonzales are former students at NCSU who alleged that they were sexually harassed by Shuaib Ahmad, a former NCSU professor. Plaintiffs filed a complaint on 28 May 1999, alleging intentional infliction of mental and emotional distress against Ahmad and against NCSU on the theory that NCSU ratified Ahmad's conduct by failing to discipline and fire him. On 20 July 1999, NCSU moved to dismiss the complaint on the basis of sovereign immunity. Plaintiffs moved to strike the defense of sovereign immunity on 13 September 1999. Plaintiffs then amended their complaint to allege that NCSU waived its sovereign immunity by purchasing liability insurance and to add causes of action against NCSU for negligent retention and negligent supervision. NCSU moved for dismissal of the amended complaint on the basis of sovereign immunity on 27 September 1999. On 4 October 1999, Plaintiffs voluntarily dismissed Ahmad as a defendant.

After a hearing, the superior court granted Plaintiffs' motion to strike the defense of sovereign immunity and denied NCSU's motion to dismiss the amended complaint, which the court had converted to a motion for summary judgment. The trial court determined that NCSU had waived the defense of sovereign immunity by purchasing liability insurance; that the doctrine of sovereign immunity does not apply to the facts of this case due to a ministerial duty exception to the doctrine; that the doctrine of sovereign immunity does not apply to claims of negligent retention and negligent supervision; and that NCSU is estopped from asserting the defense of sovereign immunity. NCSU appeals this order.

II.

We have held that "appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant imme-

diate appellate review." *Price v. Davis*, 132 N.C. App. 556, 558-59, 512 S.E.2d 783, 785 (1999). Therefore, although this is an appeal from an interlocutory order, it is properly before us. *See* N.C. Gen. Stat. §§ 1-277(a), 7A-27(d)(1) (1999); *Vest v. Easley*, 145 N.C. App. 70, 72, 549 S.E.2d 568, 571 (2001).

Sovereign immunity protects the State and its agencies from suit absent waiver or consent. *See Guthrie v. State Ports Authority*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983); *Insurance Co. v. Gold, Commissioner of Insurance*, 254 N.C. 168, 172-73, 118 S.E.2d 792, 795 (1961); *Truesdale v. University of North Carolina*, 91 N.C. App. 186, 192, 371 S.E.2d 503, 506-07 (1988), *appeal dismissed and disc. review denied*, 323 N.C. 706, 377 S.E.2d 229-30, *cert. denied*, 493 U.S. 808, 107 L. Ed. 2d 19 (1989), *overruled on other grounds by Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied sub nom. Durham v. Corum*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992). NCSU is a State agency. *See Truesdale*, 91 N.C. App. at 192, 371 S.E.2d at 506-07. Therefore, since there is no allegation that NCSU consented to suit, it is immune from suit unless its sovereign immunity has been waived.

A waiver of sovereign immunity must be established by the General Assembly. Our Supreme Court has stated that "[i]t is for the General Assembly to determine when and under what circumstances the State may be sued." *Guthrie*, 307 N.C. at 534, 299 S.E.2d at 625 (emphasis and internal quotation marks omitted). The Court has further stated that

> [t]he State and its governmental units cannot be deprived of the sovereign attributes of immunity except by a clear waiver by the lawmaking body. The concept of sovereign immunity is so firmly established that it should not and cannot be waived by indirection or by procedural rule. Any such change should be by plain, unmistakable mandate of the lawmaking body.

*Orange County v. Heath*, 282 N.C. 292, 296, 192 S.E.2d 308, 310 (1972). Moreover, a statute creating a waiver must be strictly construed. *See Floyd v. Highway Commission*, 241 N.C. 461, 464, 85 S.E.2d 703, 705 (1955); *Jones v. Pitt County Mem. Hospital*, 104 N.C. App. 613, 615-16, 410 S.E.2d 513, 514 (1991).

Plaintiffs argue that the trial court properly struck NCSU's defense of sovereign immunity for three reasons: (1) NCSU waived its sovereign immunity by purchasing liability insurance; (2) NCSU is

precluded from arguing the defense of sovereign immunity by the doctrine of quasi-estoppel; and (3) the ministerial duty exception to the doctrine of sovereign immunity applies here. We disagree on all grounds. The trial court relied upon the three grounds listed above, and additionally found that the doctrine of sovereign immunity does not apply to claims of negligent retention and negligent supervision. The court erred in this finding. *See Herring v. Winston-Salem/Forsyth County Bd. of Educ.*, 137 N.C. App. 680, 684, 529 S.E.2d 458, 462 ("[W]e find negligent supervision to be a viable tort claim subject to the doctrine of sovereign immunity."), *disc. review denied*, 352 N.C. 673, 545 S.E.2d 423 (2000).

### A.

Plaintiffs first argue that NCSU waived its sovereign immunity by purchasing liability insurance, at least up to the limit of the insurance coverage. While it may be possible to interpret the law this way, we are not persuaded that there is a "plain, unmistakable mandate" from the General Assembly to waive immunity in these circumstances. *Heath*, 282 N.C. at 296, 192 S.E.2d at 310; *see Guthrie*, 307 N.C. at 534-35, 299 S.E.2d at 625 (explaining that the State's immunity may be waived only by the General Assembly).

### 1.

Plaintiffs rely on *dicta* that has been promulgated through some of our reported cases. In *EEE-ZZZ Lay Drain Co. v. N.C. Dept. of Human Resources*, 108 N.C. App. 24, 422 S.E.2d 338 (1992), *overruled in part by Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997), this Court stated that "sovereign immunity precludes suit against the State and its agencies unless the State has consented to be sued or waived its right. Such waiver is manifested by the purchase of liability insurance . . . ." 108 N.C. App. at 27, 422 S.E.2d at 340 (citation omitted). The *EEE-ZZZ Lay Drain* Court cited *Baucom's Nursery Co. v. Mecklenburg County*, 89 N.C. App. 542, 544, 366 S.E.2d 558, 560, *disc. review denied*, 322 N.C. 834, 371 S.E.2d 274 (1988), for this proposition. However, we did not hold in *Baucom's Nursery* that the State waives its immunity by purchasing liability insurance. Rather, we stated that "a county in this State may waive governmental immunity by purchasing liability insurance," and we cited to the statutory provision that created this waiver. 89 N.C. App. at 544, 366 S.E.2d at 560 (emphasis added). Indeed, N.C. Gen. Stat. § 153A-435 (1999) provides that "[p]urchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insur-

ance coverage, for any act or omission occurring in the exercise of a governmental function." N.C.G.S. § 153A-435(a) (emphasis added); *see also* N.C. Gen. Stat. § 160A-485(a) (1999) (providing that a city may "waive its immunity from civil liability in tort by the act of purchasing liability insurance."). Subsequently, this Court stated in *Messick v. Catawba County*, 110 N.C. App. 707, 431 S.E.2d 489, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993), that the doctrine of sovereign immunity "is inapplicable . . . where the state has consented to suit or has waived its immunity through the purchase of liability insurance." 110 N.C. App. at 714, 431 S.E.2d at 493-94. The *Messick* Court cited *EEE-ZZZ Lay Drain* in support of this statement.

Despite Plaintiffs' contention to the contrary, the broad statements in *EEE-ZZZ Lay Drain* and *Messick* are *dicta*, because the holdings of those cases did not rely on the proposition that the State waives its immunity by purchasing liability insurance. *See Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985) ("Language in an opinion not necessary to the decision is *obiter dictum* and later decisions are not bound thereby."). The *EEE-ZZZ Lay Drain* Court held that there was no waiver because none of the conditions that could constitute a waiver were present in the case; there was apparently no allegation that any of the governmental defendants had purchased liability insurance. *See EEE-ZZZ Lay Drain*, 108 N.C. App. at 27, 422 S.E.2d at 341. The *Messick* Court held that there was no waiver because the record did not show that the defendant-county had purchased liability insurance. *See Messick*, 110 N.C. App. at 714, 431 S.E.2d at 494. The *dicta* from *EEE-ZZZ Lay Drain* and *Messick* have been repeated, but we have found no opinion in which the issue of whether the State waives its sovereign immunity by purchasing liability insurance was squarely confronted and decided. Because these cases do not hold that the State waives its immunity by purchasing insurance, nor do they cite a statute specifically providing that the State waives its immunity by purchasing insurance, we do not find them binding on this point.

2.

The State "partially waived" its sovereign immunity with respect to certain tort claims when the General Assembly enacted the Tort Claims Act. *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 329, 293 S.E.2d 182, 185 (1982). The Tort Claims Act provides in relevant part:

WOOD v. N.C. STATE UNIV.

[147 N.C. App. 336 (2001)]

(a)  The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State. The Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina. If the Commission finds that there was negligence on the part of an officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority that was the proximate cause of the injury and that there was no contributory negligence on the part of the claimant or the person in whose behalf the claim is asserted, the Commission shall determine the amount of damages that the claimant is entitled to be paid, including medical and other expenses, and by appropriate order direct the payment of damages as provided in subsection (a1) of this section, but in no event shall the amount of damages awarded exceed the amounts authorized in G.S. 143-299.2 cumulatively to all claimants on account of injury and damage to any one person arising out of a single occurrence. . . . The fact that a claim may be brought under more than one Article under this Chapter shall not increase the foregoing maximum liability of the State.

. . . .

(b)  If a State agency, otherwise authorized to purchase insurance, purchases a policy of commercial liability insurance providing coverage in an amount at least equal to the limits of the State Tort Claims Act, such insurance coverage shall be in lieu of the State's obligation for payment under this Article.

N.C. Gen. Stat. § 143-291 (Supp. 2000).[1]

Our Supreme Court explained that the "effect of the Tort Claims Act was twofold": the State "consent[ed] to direct suits brought as a

_____

1. We note that the statute was amended after Plaintiffs filed their claim, but the amendment applies to claims that were pending on or after 1 July 2000. *See* The Current Operations and Capital Improvements Appropriations Act of 2000, S.L. 2000-67, §§ 7A.(k), 28.5, 2000 N.C. Sess. Laws 197, 228, 440.

result of negligent acts committed by its employees in the course of their employment" and "the Act provided that the forum for such direct actions would be the Industrial Commission, rather than the State courts." *Teachy*, 306 N.C. at 329, 293 S.E.2d at 185. As the Court further explained in *Guthrie*, "an action in tort against the State and its departments, institutions, and agencies is within the exclusive and original jurisdiction of the Industrial Commission," and therefore, "a tort action against the State is not within the jurisdiction of the Superior Court." *Guthrie*, 307 N.C. at 539-40, 299 S.E.2d at 628.

Plaintiffs assert that N.C.G.S. § 143-291(b), which the General Assembly added subsequent to *Teachy* and *Guthrie*, constitutes a waiver of sovereign immunity by the State for tort actions when the State has purchased commercial liability insurance in an amount equal to or exceeding the limit set forth in § 143-291(a). Implicit in Plaintiffs' argument is the contention that, through N.C.G.S. § 143-291(b), the State has, in addition to waiving its sovereign immunity, consented to be sued in superior court for amounts up to the limits of the insurance coverage. We cannot agree with Plaintiffs that this statute implicitly waives immunity and confers jurisdiction on the superior court in cases where the State has purchased commercial liability insurance providing coverage at least equal to the limit in the Tort Claims Act.

Plaintiffs rely on *Meyer v. Walls*, 122 N.C. App. 507, 471 S.E.2d 422 (1996), *aff'd in part and rev'd in part by* 347 N.C. 97, 489 S.E.2d 880 (1997), in which this Court held that a county department of social services came within the purview of both N.C.G.S. § 143-291, the Tort Claims Act, and N.C.G.S. § 153A-435, the statute authorizing a county to purchase liability insurance. *See* 122 N.C. App. at 514, 471 S.E.2d at 427-28. Because the Tort Claims Act waives immunity while vesting jurisdiction in the Industrial Commission, and N.C.G.S. § 153A-435 waives immunity while vesting jurisdiction in superior court, this Court concluded that there was a potential conflict between the two statutes and applied rules of statutory construction in an attempt to reconcile the perceived conflict. *See* 122 N.C. App. at 511-14, 471 S.E.2d at 426-28. It was within this context that the Court stated:

> Under the plain language of G.S. 143-291(b), the Tort Claims Act no longer controls the payment of damages where a State agency has procured liability insurance with policy limits equal to or greater than the . . . cap provided for in G.S. 143-291(a). It follows

logically that G.S. 143-291(b) requires that the Tort Claims Act is no longer controlling with regard to jurisdiction once a governmental entity has procured liability insurance with policy limits equal to or greater than [this cap]. Jurisdiction is then controlled by the statute authorizing the governmental entity to purchase liability insurance.

*Id.* at 513, 471 S.E.2d at 427.

On appeal, our Supreme Court held that a county department of social services is not a State agency, and therefore does not fall within the purview of the Tort Claims Act. *See Meyer*, 347 N.C. at 103, 489 S.E.2d at 883. Instead, a county department of social services is a county agency, subject only to N.C.G.S. § 153A-435. *See Meyer*, 347 N.C. at 108, 489 S.E.2d at 886. Hence, there is no statutory conflict, and jurisdiction lies in superior court when a county agency has waived its sovereign immunity. Because the entire analysis of the Court of Appeals opinion was predicated on the assumption, held by the Supreme Court to be erroneous, that there was a potential conflict between the jurisdictional provisions of N.C.G.S. § 143-291 and N.C.G.S. § 153A-435, we do not find our Court's opinion in *Meyer* compelling.

We conclude that the issue of whether N.C.G.S. § 143-291(b) constitutes a waiver of sovereign immunity beyond that created in N.C.G.S. § 143-291(a) is an issue of first impression. Our Supreme Court has held that the Tort Claims Act must be strictly construed because it is in derogation of sovereign immunity. *See Floyd*, 241 N.C. at 464, 85 S.E.2d at 705. Strictly construing the language at issue here, we believe that the phrase "such insurance coverage shall be in lieu of the State's obligation for payment under this Article," N.C.G.S. § 143-291(b), is more consistent with a designation of the source of payment than with a designation of the forum for adjudication.

In the absence of language explicitly expressing such intent, we are constrained to hold that the General Assembly did not intend N.C.G.S. § 143-291(b) to waive the State's sovereign immunity beyond that specified in N.C.G.S. § 143-291(a), and that jurisdiction over tort claims against the State and its agencies remains exclusively with the Industrial Commission. Similar language in other statutory provisions governing tort claims brought against the State, its agencies, and its employees, supports this interpretation of N.C.G.S. § 143-291(b) as designating the source of payment of an award when the State has purchased liability insurance of a certain amount. Article 31, "Tort

Claims against State Departments and Agencies," governs tort claims brought directly against the State, its departments, or agencies. A statutory provision within this Article states as follows:

> (a) The maximum amount that the State may pay cumulatively to all claimants on account of injury and damage to any one person arising out of any one occurrence, whether the claim or claims are brought under this Article, or. Article 31A. or Article 31B of this Chapter, shall be five hundred thousand dollars ($500,000), less any commercial liability insurance purchased by the State and applicable to the claim or claims under G.S. 143-291(b), 143-300.6(c), or 143-300.16(c).

> (b) The fact that a claim or claims may be brought under more than one Article under this Chapter shall not increase the above maximum liability of the State.

N.C. Gen. Stat. § 143-299.2 (Supp. 2000) (emphasis added). The emphasized portion of this provision suggests the General Assembly envisioned that any commercial liability insurance would be used to offset the State's payment obligation, not to further waive the State's immunity.

Article 31A of Chapter 143 of the General Statutes is entitled "Defense of State Employees, Medical Contractors and Local Sanitarians." This Article provides for the defense by the State of an action brought against a State employee "on account of an act done or omission made in the scope and course of his employment as a State employee." N.C. Gen. Stat. § 143-300.3 (1999). Additionally, Article 31A provides that the State will pay any judgment "awarded in a court of competent jurisdiction against a State employee," not to exceed the maximum amount payable under the Tort Claims Act. N.C. Gen. Stat. § 143-300.6(a) (Supp. 2000). Subsection (c) of N.C.G.S. § 143-300.6 provides that "[t]he coverage afforded employees . . . under this Article shall be excess coverage over any commercial liability insurance, other than insurance written under G.S. 58-32-15, up to the limit provided in subsection (a)." Section 58-32-15 authorizes State departments and agencies to acquire additional insurance covering their employees and is discussed further below. Section 143-300.6(c) again indicates that the General Assembly intended that commercial liability insurance would reduce the payment obligation of the State, rather than further waive immunity. Indeed, the same statute that provides for the payment of a judgment awarded against an employee expressly states that it "does not waive

the sovereign immunity of the State with respect to any claim." N.C.G.S. § 143-300.6(a). These provisions may explain why an agency would purchase insurance in an amount exceeding the limit in the Tort Claims Act. When actions against a State employee are allowable, they are brought in superior court, where an award is not limited as in N.C.G.S. § 143-291(a). *See Meyer*, 347 N.C. at 105, 489 S.E.2d at 884. Although the agency itself is not liable for an amount exceeding the limit in the Tort Claims Act, it may purchase insurance to cover the liability of an employee.

3.

Furthermore, after careful review of the insurance policy on which Plaintiffs rely for their argument, we conclude that the policy was purchased pursuant to N.C. Gen. Stat. § 58-32-15 (1999). Because this statute expressly provides that the purchase of such insurance does not constitute a waiver of sovereign immunity, *see* N.C.G.S. § 58-32-15(c), the purchase of this policy did not waive NCSU's immunity.

Article 32 of Chapter 58 of the General Statutes is entitled "Public Officers and Employees Liability Insurance Commission." The Article establishes the Public Officers and Employees Liability Insurance Commission ("the Commission"). *See* N.C. Gen. Stat. § 58-32-1 (1999). The Commission is authorized to "acquire from an insurance company or insurance companies a group plan of professional liability insurance covering the law-enforcement officers and/or public officers and employees of any political subdivision of the State." N.C. Gen. Stat. § 58-32-10 (1999). Additionally, the Commission is authorized to "acquire professional liability insurance covering the officers and employees, or any group thereof, of any State department, institution or agency or any community college or technical college." N.C.G.S. § 58-32-15(a). Other than these two provisions, no other statutory authorization has been given to the Commission for the purchase of liability insurance.

The policy which Plaintiffs have provided in the record on appeal lists as the named insured "Public Officers & Employees Liability Insurance Commission and All Persons Covered Under Defense of State Employees State of North Carolina." Because the Commission is authorized to purchase insurance for a State agency pursuant only to N.C.G.S. § 58-32-15, we must conclude that it purchased this policy pursuant to that statute.

Moreover, the Commission is authorized to acquire professional liability insurance pursuant to N.C.G.S. § 58-32-15 "only if the coverage to be provided by the insurance policy is in excess of the protection provided by Articles 31 and 31A of Chapter 143 of the General Statutes." N.C.G.S. § 58-32-15(b). The policy at issue here states that "[t]he insurance afforded by this policy is . . . excess of any amount payable by the State, or its agencies or departments, pursuant to the requirements of the Defense of State Employees Act, North Carolina General Statute 143.300.2 through 143-300.6." The fact that language in the policy parallels language in N.C.G.S. § 58-32-15(b) further demonstrates that the policy was issued pursuant to this statute. Accordingly, purchase of this policy did not constitute a waiver of sovereign immunity. *See* N.C.G.S. § 58-32-15(c).

4.

In summary, we conclude that N.C.G.S. § 143-291(b) does not constitute a waiver of sovereign immunity beyond that provided in N.C.G.S. § 143-291(a), and, according to the express terms of N.C.G.S. § 58-32-15, the purchase of the insurance policy at issue here did not waive the State's immunity. Therefore, the superior court does not have jurisdiction over Plaintiffs' claim against NCSU, and any such claim would proceed, if at all, under the Tort Claims Act in the Industrial Commission.

B.

Plaintiffs next argue that NCSU is barred from arguing its sovereign immunity defense by the doctrine of quasi-estoppel. We disagree.

Plaintiffs cite several cases in support of their argument that NCSU should be estopped from asserting its immunity defense. In none of these cases, however, did the court invoke quasi-estoppel to bar an assertion by the State of its sovereign immunity. In *Holland Group v. N.C. Dept. of Administration*, 130 N.C. App. 721, 504 S.E.2d 300 (1998), an administrative agency was estopped from making certain factual assertions. *See* 130 N.C. App. at 725-27, 504 S.E.2d at 304-05. In *Godley v. County of Pitt*, 306 N.C. 357, 293 S.E.2d 167 (1982), a workers compensation case, a county was estopped from arguing that an injured worker was not its employee. *See* 306 N.C. at 358-60, 293 S.E.2d at 168-69. In *Washington v. McLawhorn*, 237 N.C. 449, 75 S.E.2d 402 (1953), our Supreme Court, while acknowledging that circumstances might arise under which estoppel may be applied

against a county, held that the plaintiffs failed to allege an estoppel against a county that had asserted title to land. *See* 237 N.C. at 454, 75 S.E.2d at 405-06. No issue of sovereign immunity was raised in any of these cases.

As Plaintiffs concede, quasi-estoppel is an equitable doctrine. *See, e.g., Thompson v. Soles,* 299 N.C. 484, 486, 263 S.E.2d 599, 602 (1980). However, the law is clear that any waiver of the State's sovereign immunity must be by action of the General Assembly. *See Blackwelder v. City of Winston-Salem,* 332 N.C. 319, 324, 420 S.E.2d 432, 435 (1992) ("We feel that any change in this doctrine [of sovereign immunity] should come from the General Assembly."); *Guthrie,* 307 N.C. at 534, 299 S.E.2d at 625 ("It is for the General Assembly to determine when and under what circumstances the State may be sued." (emphasis and internal quotation marks omitted)); *Steelman v. City of New Bern,* 279 N.C. 589, 595, 184 S.E.2d 239, 243 (1971) ("[A]ny further modification or the repeal of the doctrine of sovereign immunity should come from the General Assembly, not this Court."). If a court could estop NCSU from asserting its otherwise valid sovereign immunity defense, then, effectively, that court, rather than the General Assembly, would be waiving the State's sovereign immunity.

C.

Finally, citing *Broome v. Charlotte,* 208 N.C. 729, 182 S.E. 325 (1935), Plaintiffs contend that the ministerial duty exception to the doctrine of sovereign immunity applies here, thereby depriving NCSU of its sovereign immunity defense, because NCSU had a written sexual harassment policy that made it mandatory for NCSU to take disciplinary action against Ahmad. While the record shows that NCSU did have such a policy, we disagree that it implicates an exception to the doctrine of sovereign immunity in this case.

In *Broome,* our Supreme Court explained that a city's immunity is not absolute:

In its public or governmental character a municipal corporation acts as agent of the State for the better government of that portion of its people who reside within the municipality, while in its private character it exercises powers and privileges for its own corporate advantage. When a municipal corporation is acting in its ministerial or corporate character in the management of

property for its own benefit, it may become liable for damages caused by the negligence of its agents subject to its control. But when the city is exercising the judicial, discretionary, or legislative authority conferred by its charter, or is discharging a duty imposed solely for the benefit of the public, it incurs no liability for the negligence of its agents, unless some statute subjects the corporation to responsibility.

208 N.C. at 731, 182 S.E. at 326. We need not consider whether, as Plaintiffs assert, the administration of a sexual harassment policy comes within this exception. In cases where a county or city asserts its immunity, this Court, following our Supreme Court, continues to recognize the distinction between torts committed during the performance of governmental functions, on the one hand, and torts committed during the performance of ministerial or proprietary functions, on the other hand; a county or city enjoys immunity only with respect to the former. *See, e.g., Data Gen. Corp. v. Cty. of Durham,* 143 N.C. App. 97, 104-05, 545 S.E.2d 243, 248-49 (2001). Our Supreme Court has held that, although the proprietary function exception is valid as applied to the city or county level of government, the exception is not applicable when the State asserts its sovereign immunity. *See Guthrie,* 307 N.C. at 534, 299 S.E.2d at 625 ("The State has absolute immunity in tort actions without regard to whether it is performing a governmental or proprietary function except insofar as it has consented to be sued or otherwise expressly waived its immunity."). It is not clear whether the proprietary function exception is distinct from the ministerial duty exception, and we have not found a case addressing whether the ministerial duty exception is applicable to the State. Nevertheless, the Supreme Court's reasoning in rejecting the proprietary function exception to the State's sovereign immunity makes clear that the nature of the action is irrelevant. *See id.* (rejecting the proprietary function exception as applied to the State due to the well-established proposition that the State's immunity is "*absolute and unqualified*"). Therefore, NCSU "is entitled to claim the defense of sovereign immunity absent express statutory waiver." *Id.* at 535, 299 S.E.2d at 625.

### III.

In conclusion, we hold that the trial court erred in granting Plaintiffs' motion to strike NCSU's defense of sovereign immunity and denying summary judgment for NCSU. To the extent that NCSU's sovereign immunity has been waived, jurisdiction lies with the Industrial

Commission, pursuant to N.C.G.S. § 143-291(a). Accordingly, we remand to the superior court for dismissal of the action.

Reversed and remanded.

Judges McGEE and JOHN concur.