GINGER HUBER, Plaintiff v. NORTH CAROLINA STATE UNIVERSITY; RALPH HARPER, DIRECTOR OF PUBLIC SAFETY, NORTH CAROLINA STATE UNIVERSITY; JEFF MANN, ASSOCIATE VICE CHANCELLOR FOR BUSINESS, NORTH CAROLINA STATE UNIVERSITY; GEORGE L. WORSLEY, VICE CHANCELLOR OF FINANCE & BUSINESS, NORTH CAROLINA STATE UNIVERSITY; DAVE RAINER, ASSOCIATE VICE CHANCELLOR FOR ENVIRONMENTAL HEALTH AND PUBLIC SAFETY, NORTH CAROLINA STATE UNIVERSITY, Defendants

No. COA03-145

(Filed 20 April 2004)

**1. Appeal and Error— appealability—interlocutory order— sovereign immunity**

Issues of immunity affect a substantial right and warrant immediate review.

**2. Telecommunications— wiretapping—federal statute—abrogation of state sovereign immunity**

The trial court properly denied a motion to dismiss claims against a state university under federal wiretapping law where defendant claimed sovereign immunity. Congress acted within its constitutional powers by holding governmental entities liable and abrogating state sovereign immunity.

**3. Telecommunications— wiretapping—state university public safety director—qualified immunity**

The trial court properly denied defendant's motion to dismiss claims arising from a state university official recording personal telephone conversations of an employee where defendant claimed qualified immunity, but there was a factual dispute as to whether the recordings were made pursuant to standard procedure.

**4. Telecommunications— wiretapping university employees— public official immunity—scope of duties**

The trial court properly denied a motion to dismiss claims arising from the recording of personal telephone recordings by a university's public safety director where defendant claimed public official immunity, but there were issues as to whether the director was acting outside the scope of his duties.

Appeal by defendants from orders entered 4 October 2002 by Judge Howard E. Manning, Jr., in Wake County Superior Court. Heard in the Court of Appeals 12 November 2003.

**HUBER v. N.C. STATE UNIV.**

[163 N.C. App. 638 (2004)]

*Moore & Van Allen, PLLC, by Reed J. Hollander and Ellis & Winters, LLP, by Jonathan D. Sasser, for plaintiff appellee.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Thomas J. Ziko, for defendant appellants North Carolina State University, Jeff Mann, George L. Worsley, Dave Rainer, and Thomas Younce.*

*Attorney General Roy Cooper, by Assistants Attorney General Deborrah L. Newton and William McBlief, for defendant appellant Ralph Harper.*

WYNN, Judge.

By this appeal, defendants North Carolina State University ("NCSU"), Jeff Mann ("Mann"), George Worsley ("Worsley"), Dave Rainer ("Rainer"), and Thomas Younce ("Younce") (collectively hereinafter "Defendants") contend the trial court erred in denying their motion to dismiss claims brought by Plaintiff Ginger Huber ("Plaintiff"). Specifically, Defendants assert that (I) the doctrine of sovereign immunity bars claims brought against NCSU and Younce in his official capacity; (II) the complaint failed to name Mann, Worsley, and Rainer in their individual capacities; and (III) the doctrine of qualified immunity bars Plaintiff's claims against Mann, Worsley and Rainer. In a cross-appeal, defendant Ralph Harper ("Harper") argues the trial court erred in denying his motion to dismiss, in that (I) Plaintiff's complaint failed to name Harper in his individual capacity; (II) the doctrine of qualified immunity bars Plaintiff's claims; and (III) public official immunity bars Plaintiff's claims. After careful consideration, we affirm the orders of the trial court.

On 3 May 2001, Plaintiff filed a complaint, which was later amended, against Defendants and Harper in Wake County Superior Court. According to the pertinent allegations contained in Plaintiff's amended complaint, Plaintiff began employment on 13 October 1997 as personal assistant to Harper, who was at that time the director of the NCSU Department of Public Safety ("Department of Public Safety"). During her orientation, Plaintiff was never notified that any telephone lines within the Department of Public Safety's offices were recorded. Two months later, however, fellow employees informed Plaintiff of the existence of a "Digital Audio Tape" recorder in the Department of Public Safety offices, which, Plaintiff also learned, Harper used to record the personal telephone conversations of a certain employee. When Plaintiff confronted Harper with this informa-

tion, Harper assured Plaintiff that her telephone line was not connected to the Digital Audio Tape system and could not be recorded. Harper explained that he often used Plaintiff's telephone in the evenings and did not want to record his own conversations.

In November of 1998, Harper issued a departmental "Standard Operating Procedure" entitled "Downloading Telephone Calls and Radio Transmissions from the [Digital Audio Tape] Recorder." Under the Standard Operating Procedure, the only personnel granted access to the Digital Audio Tape recorder were the computer support technician and the telecommunications center supervisor. In May of 1999, however, Harper hired Audio Data Systems, Inc. to install computer software on his office computer to enable him to listen to the telephone conversations of Department of Public Safety employees. According to the complaint, Harper did so in order to prevent Department of Public Safety employees from revealing his improper activities. Such alleged activities included unauthorized personal expenditure of departmental funds, misuse of departmental computer systems, inappropriate personal relationships with female employees and retaliation against employees who interfered with his conduct.

In late 1999 and early 2000, Plaintiff became aware that, despite Harper's protestations to the contrary, her personal telephone conversations were being recorded. Harper assured her that any such recording was in error, and told her that he would have her telephone line removed from the Digital Audio Tape recorder. Plaintiff learned in June of 2000 that her line was still being recorded.

On 18 June 2000, a local newspaper published a front-page article detailing its investigation of improper conduct by Harper, including his surreptitious recording of telephone conversations of Department of Public Safety employees. Shortly after publication of the article, NCSU informed Harper that he should retire by 30 June 2000. Defendant Younce subsequently became the new Director of Public Safety.

In her amended complaint, Plaintiff set forth claims against Defendants and Harper for violations of (1) federal wiretapping law; (2) Plaintiff's right to privacy under the Fourth and Fourteenth Amendments to the United States Constitution; (3) State wiretapping law; and (4) Plaintiff's rights under Article I, sections 19 and 20 of the North Carolina Constitution. Defendants and Harper filed motions to

dismiss Plaintiff's complaint, which motions the trial court granted in part and denied in part. Defendants and Harper appealed.

---

**[1]** As a preliminary matter, we note that although the denial of a motion to dismiss is an interlocutory order, where an appeal from an interlocutory order raises issues of sovereign immunity, it affects a substantial right sufficient to warrant immediate appellate review. *Campbell v. Anderson*, 156 N.C. App. 371, 374, 576 S.E.2d 726, 728, *disc. review denied*, 357 N.C. 457, 585 S.E.2d 385 (2003). Defendants and Harper argue, *inter alia*, that the doctrines of sovereign and qualified immunity bar Plaintiff's claims. We therefore address the merits of those arguments set forth by Defendants and Harper concerning immunity.

**[2]** In general, because NCSU is a State agency, *Wood v. N.C. State Univ.*, 147 N.C. App. 336, 338, 556 S.E.2d 38, 40 (2001), *disc. review denied*, 355 N.C. 292, 561 S.E.2d 887 (2002), NCSU and Younce in his official capacity are entitled to sovereign immunity against Plaintiff's federal wiretap claim. *See Alden v. Maine*, 527 U.S. 706, 712, 144 L. Ed. 2d 636, 652 (1999) (holding that sovereign immunity shields States from private suits in state courts pursuant to federal causes of action). However, Congress may abrogate sovereign immunity of the States when it (1) expresses an unequivocal intention to abrogate such immunity and (2) acts pursuant to a valid grant of constitutional authority. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73, 145 L. Ed. 2d 522, 535 (2000). We therefore examine the federal wiretapping law to determine whether it expresses an intent by Congress to abrogate State sovereign immunity, and, if so, whether Congress acted within its constitutional authority in doing so.

### 18 U.S.C. Section 2520(a)

Congress enacted section 2520(a) of Title 18 of the United States Code as part of the Omnibus Crime Control and Safe Streets Act in 1968. *See* Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, §802, 82 Stat. 223 (1968). Section 2520(a) allows an individual whose rights are violated by the interception and disclosure of wire or oral communications to bring a private cause of action against any "person" responsible for such violations. *See* 18 U.S.C. § 2520(a) (2000). The term "person" under section 2520(a) is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." 18 U.S.C. § 2510(6) (2000).

In 1986, Congress enacted legislation in response to the growing use of electronic communications. The Electronic Communications Privacy Act of 1986 criminalized and created civil liability for intentionally intercepting electronic communications without a judicial warrant. *See* Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1848 (1986); *Adams v. City of Battle Creek*, 250 F.3d 980, 982 (6th Cir. 2001). In doing so, the Electronic Communications Privacy Act expanded section 2520(a) to allow for recovery for the interception and disclosure of electronic communication, in addition to wire and oral communication. Significantly, the 1986 amendment also added the words "or entity" following "person," allowing for civil action against "the person or entity which engaged in [the] violation." However, Congress did not expressly define the term "entity".

Finally, section 2520(a) was again amended in 2001 by the USA Patriot Act, which added the phrase "other than the United States" following "person or entity." *See* Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001). Thus, as currently enacted, section 2520(a) states that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from <u>the person or entity, other than the United States</u>, which engaged in that violation such relief as may be appropriate." 18 U.S.C.A. § 2520(a) (West Supp. 2003) (emphasis added). The question for this Court is whether the term "entity" includes governmental entities, which would signal that the statute abrogates their sovereign immunity.

Plaintiff asserts Congress abrogated State sovereign immunity by adding the term "entity" to those liable to suit. Defendants contend the statutory language does not express an "unequivocal intention" by Congress to abrogate such immunity. The majority of the federal courts addressing the issue have held that a governmental entity may be liable in a civil suit. *See Organizacion JD LTDA. v. U.S. Dept. of Justice*, 18 F.3d 91, 94-95 (2nd Cir. 1994), *cert. denied*, 512 U.S. 1207, 129 L. Ed. 2d 813 (1994); *Adams*, 250 F.3d at 985-86; *Conner v. Tate*, 130 F. Supp. 2d 1370, 1374-75 (N.D. Ga. 2001); *Dorris v. Absher*, 959 F. Supp. 813, 819-20 (M.D. Tenn. 1997), *affirmed in part and reversed in part on other grounds*, 179 F.3d 420 (6th Cir. 1999); *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F. Supp. 808, 822-23 (D.N.J. 1993). These courts reasoned that, by adding the word "entity" to those

against whom a suit could be pursued under section 2520(a), Congress could have only meant "governmental entities," inasmuch as the term "person" already included business entities by definition. The addition of the language evinced a clear intent by Congress to abrogate the protections of sovereign immunity to the States.

The United States Court of Appeals for the Seventh Circuit has ruled to the contrary, however. *See Abbott v. Village of Winthrop Harbor*, 205 F.3d 976, 980-81 (7th Cir. 2000); *see also Amati v. City of Woodstock, Ill.*, 829 F. Supp. 998, 1001-03 (N.D. Ill. 1993) (concluding that governmental entities may not be held liable under federal wiretapping law); *but see Bodunde v. Parizek*, 1993 U.S. Dist. LEXIS 7365, 1993 WL 189941 (N.D.Ill. 1993) (stating that "[s]ection 2520(a) expressly provides that municipal entities may be held liable for violations of the Federal Wiretapping Act"), *affirmed*, 108 F.3d 1379 (7th Cir. 1997). The Court in *Abbott* concluded that the plain meaning of the term "person" as defined by section 2510(6) did not include governmental entities, and therefore governmental entities were immune from suit. *Abbott*, 205 F.3d at 980-81.

We agree with the United States Courts of Appeals for the Second and Sixth Circuits that the term "entity" necessarily means governmental entities. A contrary decision renders the term "entity" superfluous. *See Adams*, 250 F.3d at 985; *Organizacion JD LTDA.*, 18 F.3d at 94-95. The definition of "person" includes "partnership, association, joint stock company, trust or corporation;" i.e., business entities. If the term "business entity" is substituted for the word "person," then recovery is possible under section 2520(a) from "the business entity or entity." Unless the term "entity" denotes governmental entities, the phrase is redundant and nonsensical. The addition of the phrase "other than the United States" to section 2520(a) in 2001 provides further support for this conclusion. If Congress did not believe section 2520(a) created liability for governmental entities, there would have been no need to create a special liability exception for the federal government by adding the phrase "other than the United States." We conclude that, by adding the term "entity" to section 2520(a), Congress expressed its clear intent to create civil liability for governmental entities.

Having satisfied the first part of our inquiry, we must now determine whether Congress could properly abrogate sovereign immunity. Section Five of the Fourteenth Amendment grants Congress the authority to abrogate the States' sovereign immunity. *Kimel*, 528 U.S. at 80, 145 L. Ed. 2d at 540. Thus, where Congress enacts legislation

pursuant to its authority under Section Five of the Fourteenth Amendment, such legislation may properly abrogate the sovereign immunity of the States. *Id.* Congress cannot abrogate sovereign immunity pursuant to the Commerce Clause, however. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72-73, 134 L. Ed. 2d 252, 276-77 (1996).

Defendants assert that the federal wiretapping law was drafted pursuant to authority granted to Congress under the Commerce Clause. *See United States v. Duncan*, 598 F.2d 839, 854 (4th Cir. 1979) (holding that Congress had the constitutional authority to enact 18 U.S.C. § 2511(1)(b)(iv) under the Commerce Clause), *cert. denied*, 444 U.S. 871, 62 L. Ed. 2d 96 (1979). The Court in *Duncan*, however, expressly declined to consider whether other constitutional bases would support the federal wiretapping law. *See id.* at 854 n.11 (stating that, "[s]o holding, we need not decide whether the other constitutional bases advanced by the government would suffice"). However, in a later decision, the United States Court of Appeals for the Ninth Circuit, after examining the legislative history of the federal wiretapping law, concluded that Congress prohibited the interception of oral communications pursuant to both the Commerce Clause *and* the Fourteenth Amendment's grant of privacy. *See United States v. Anaya*, 779 F.2d 532, 535-36 (9th Cir. 1985) (noting that Congress was uncertain as to whether all interceptions of oral communications had an effect on interstate commerce, and therefore legislated pursuant to its authority under the Fourteenth Amendment, as well as the Commerce Clause).

We agree that Congress acted pursuant to its power under both the Commerce Clause and Section Five of the Fourteenth Amendment in legislating the federal wiretapping law. As such, Congress could properly abrogate State sovereign immunity by holding governmental entities liable under section 2520(a). We therefore conclude the doctrine of sovereign immunity does not shield NCSU and Younce from Plaintiff's claim against them for violations of federal wiretapping law. The trial court properly denied the motions by NCSU and Younce to dismiss on this basis, and we overrule this assignment of error.

*Qualified Immunity*

**[3]** Defendants and Harper further contend they are entitled to qualified immunity from Plaintiff's federal and constitutional claims. Under the doctrine of qualified immunity, "government officials per-

forming discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 410 (1982); *Corum v. University of North Carolina*, 330 N.C. 761, 772-74, 413 S.E.2d 276, 284, *cert. denied, Durham v. Corum*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992). In determining whether qualified immunity exists, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 150 L. Ed. 2d 272, 281 (2001). If the facts sufficiently allege a constitutional violation, "the next, sequential step is to ask whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 150 L. Ed. 2d at 282.

In her complaint, Plaintiff alleged that Harper intentionally recorded her personal telephone calls for illicit and "personal purposes and not for any investigative or law enforcement purposes." The complaint also denied that such recording was conducted in the ordinary course of business. Plaintiff further alleged that Defendants "encouraged, ratified, or knowingly acquiesced in the actions of Defendant Harper." These allegations are sufficient to demonstrate a violation of Plaintiff's constitutional and statutory right to privacy. We must therefore determine whether Plaintiff's right to privacy was clearly established at the time.

Defendants and Harper argue that Harper could not have known that his actions violated Plaintiff's privacy rights, asserting that the recordings were made for law enforcement purposes and in the ordinary course of business. Because the office telephone lines were recorded for law enforcement purposes, Defendants submit Plaintiff had no reasonable expectation of privacy in her personal telephone conversations. Whether the recordings were made pursuant to standard departmental procedure or otherwise, however, remains an issue of vital factual dispute between the parties. As such, the trial court properly denied the motions to dismiss on this issue. *See Campbell*, 156 N.C. App. at 375, 576 S.E.2d at 729 (noting that the determination of whether qualified immunity exists " 'may require factual determinations respecting disputed aspects of the officer's conduct. . . . Thus, if there are genuine issues of historical fact respecting the officer's

conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial' ") (quoting *Roberts v. Swain*, 126 N.C. App. 712, 718, 487 S.E.2d 760, 765, *cert. denied*, 347 N.C. 270, 493 S.E.2d 746 (1997)).

### Public Official Immunity

[4] Harper contends he is also entitled to public official immunity from Plaintiff's claims against him for violations of sections 15A-287 *et seq.* of the North Carolina General Statutes. The public immunity doctrine protects public officials from individual liability for negligence in the performance of their governmental or discretionary duties. *Myer v. Walls*, 347 N.C. 97, 112-13, 489 S.E.2d 880, 888-89 (1997). Public official immunity does not protect a public official from liability based on corrupt or malicious actions, however. *Id.* As was the case with qualified immunity, outstanding issues of fact remain as to whether Harper acted outside the scope of his duties, maliciously or with a corrupt purpose. The trial court therefore properly denied Harper's motion to dismiss on this issue.

Defendants and Harper present additional arguments involving issues unrelated to immunity and requiring factual determinations yet to be resolved by the trial court. As these issues are not properly before this Court, we do not address them. The orders of the trial court are hereby,

Affirmed.

Judges TIMMONS-GOODSON and ELMORE concur.