LARRY DONNELL GREEN, BY AND THROUGH HIS GUARDIAN AD LITEM, SHARON CRUDUP;
LARRY ALSTON, INDIVIDUALLY; RUBY KELLY, INDIVIDUALLY, PLAINTIFFS V. WADE R.
KEARNEY, II; PAUL KILMER; KATHERINE ELIZABETH LAMELL; PAMELA BALL
HAYES; RONNIE WOOD; PHILLIP GRISSOM, JR.; DR. J.B. PERDUE, INDIVIDUALLY,
AND IN HIS OFFICIAL CAPACITY AS MEDICAL EXAMINER OF FRANKLIN COUNTY; LOUISBURG
RESCUE AND EMERGENCY MEDICAL SERVICES, INC.; FRANKLIN COUNTY
EMERGENCY MEDICAL SERVICES, EPSOM FIRE AND RESCUE ASSOCIATION,
INC.; AND FRANKLIN COUNTY, NORTH CAROLINA, A BODY POLITIC, DEFENDANTS

No. COA09-787

(Filed 6 April 2010)

**1. Appeal and Error— interlocutory order—subject matter jurisdiction—governmental immunity—substantial right not affected**

An appeal from the denial of a medical examiner's motion to dismiss for lack of subject matter jurisdiction based on sovereign immunity was interlocutory and was dismissed. The general rule is that sovereign immunity is a question of personal jurisdiction rather than subject matter jurisdiction.

**2. Appeal and Error— interlocutory order—denial of Rule 12(b)(6) motion to dismiss—governmental immunity—substantial right affected**

A denied Rule 12 (b)(6) motion to dismiss by a medical examiner was based on sovereign immunity, affected a substantial right, and was immediately appealable.

**3. Public Officers and Employees— appointed county medical examiner—public officer**

An appointed county medical examiner was a public officer of the State.

**4. Immunity— governmental—waiver—allegation—particular language not required**

Plaintiffs sufficiently alleged a waiver of sovereign immunity in a suit against a medical examiner where the allegation was that the State had waived immunity "by statute." No particular language is required in the complaint to allege waiver of sovereign immunity.

**5. Immunity— governmental—county medical examiner— sued in official capacity**

The trial court erred by denying a county medical examiner's Rule 12(b)(6) motion to dismiss a claim against him in his official

capacity where the State had not consented to being sued in superior court. To bring the State in as a third-party, the action must have originated in superior court against a defendant not protected by official sovereign immunity.

**6. Immunity— governmental—waiver—county medical examiner—insurance purchased by DHHS**

In an action against a county medical examiner appointed by the Department of Health and Human Services (DHHS), the proper forum for the case is the Industrial Commission even if DHHS has purchased liability insurance. The case is controlled by *Wood v. N.C. State Univ.*, 147 N.C. App. 336, and plaintiffs did not state a claim for relief in superior court against the medical examiner in his official capacity.

**7. Tort Claims Act— claim not added to superior court claims**

Plaintiffs were not allowed to maintain an action against a medical examiner in superior court along with other claims against the county and its employees in the interests of judicial economy, where plaintiff had already filed a claim against the State in the Industrial Commission, so that two actions already existed. Moreover, the Tort Claims Act sets out the parameters of the State's waiver of sovereign immunity, and the Court of Appeals cannot set aside statutory restrictions even in the name of judicial economy.

**8. Physicians— medical examiner—individual capacity—failure to examine—not malicious or corrupt**

Plaintiffs did not state a claim which could be granted against a county medical examiner in his individual capacity where plaintiffs' allegations did not support the assertion that the medical examiner's actions were in bad faith or were willful, wanton, corrupt, malicious, or recklessly indifferent. Upon arriving at the scene of an accident where an individual has been declared dead, the medical examiner is not required by statute to conduct his or her own examination, but need only take charge of the body.

Appeal by defendant J.B. Perdue from order entered 12 March 2009 by Judge Henry W. Hight, Jr. in Franklin County Superior Court. Heard in the Court of Appeals 18 November 2009.

*Bell & Vincent-Pope, P.A., by Judith M. Vincent-Pope for plaintiffs-appellees.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Mabel Y. Bullock and J.P. Williamson, Jr., for defendant-appellant.*

HUNTER, Robert C., Judge.

Doctor J.B. Perdue ("Perdue") appeals from the trial court's denial of his motion to dismiss the complaint filed by Larry Donnell Green ("Green"), by and through his Guardian *ad Litem*, Sharon Crudup, Larry Alston, and Ruby Kelly (collectively "plaintiffs"), which was brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of Civil Procedure on the basis of sovereign immunity. After careful review, we decline to address defendant's argument with regard to Rule 12(b)(1) as it is interlocutory and not immediately appealable. With regard to the trial court's order pertaining to Rule 12(b)(6), we reverse.

## Background

The facts as alleged in plaintiffs' complaint show that on 24 January 2005, at approximately 8:53 p.m., emergency services were dispatched in Franklin County, North Carolina to the scene of an accident involving a pedestrian—Green—and a motor vehicle. Green suffered an open head wound as a result of the accident. Defendant Wade Kearney ("Kearney") with the Epsom Fire Department was the first to arrive at the scene and checked Green for vital signs. Kearney determined that Green was dead and did not initiate efforts to resuscitate him.

Several minutes later, defendants Paul Kilmer ("Kilmer") and Katherine Lamell ("Lamell") with Franklin County EMS arrived. Kearney asked Kilmer to verify that Green did not have a pulse, but Kilmer declined to do so, stating that Kearney had already checked and that was sufficient. Without checking the pupils or otherwise manually rechecking for a pulse, Kearney and Kilmer placed a white sheet over Green's body.

At approximately 9:00 p.m., defendants Pamela Hayes ("Hayes") and Ronnie Wood ("Wood") with the Louisburg Rescue Unit arrived at the scene. After being informed by Kearney and Kilmer that Green was dead, neither Hayes nor Wood checked Green for vital signs. At around 9:31 p.m., Perdue, the Franklin County Medical Examiner, ar-

rived at the scene. He first conducted a survey of the scene, taking notes regarding the location of Green's body and the condition of the vehicle that struck him. Once the Crime Investigation Unit arrived, Perdue inspected Green's body. While Perdue was examining Green, eight people saw movement in Green's chest and abdomen. Kearney asked Perdue whether Green was still breathing and Perdue responded: "That's only air escaping the body." Once Perdue finished examining Green, he directed that Green should be taken to the morgue located at the Franklin County jail.

At approximately 10:06 p.m., Green was transported to the morgue by Hayes and Wood where Perdue examined him. Perdue lifted Green's eyelids, smelled around Green's mouth to determine the source of an odor of alcohol that had been previously noted, and drew blood. During this particular examination, Perdue, Hayes, and Wood all observed several twitches in Green's upper right eyelid. Upon being asked if he was sure Green was dead, Perdue responded that the eye twitch was just a muscle spasm. Plaintiffs claim that Hayes did not feel comfortable with Perdue's response and went outside to report the eye twitch to Lamell. Hayes then returned inside and asked Perdue again if he was sure Green was dead. Perdue reassured Hayes that Green was, in fact, dead. Green was then placed in a refrigeration drawer until around 11:23 p.m. when State Highway Patrolman Tyrone Hunt ("Hunt") called Perdue and stated that he was trying to ascertain the direction from which Green was struck. To assist Hunt, Perdue removed Green from the drawer and unzipped the bag in which he was sealed. Perdue then noticed movement in Green's abdomen and summoned emergency services. Green was rushed to the hospital where he was treated from 25 January 2005 to 11 March 2005. Green was alive at the time this action was brought. His exact medical condition is unknown, though plaintiffs allege that he suffered severe permanent injuries.

On 22 May 2008, Green, through his guardian *ad Litem*, and Green's parents, Larry and Kelly Alston, brought this action in Franklin County Superior Court. Plaintiffs allege, *inter alia*, general negligence on the part of Perdue in his official capacity as medical examiner for Franklin County, and willful and wanton negligence on the part of Perdue in his individual capacity.[1] On 23 July 2008, in lieu of an answer, Perdue filed a motion to dismiss the claims against him pursuant to Rule 12(b)(1), which pertains to lack of subject matter

1. This appeal only concerns defendant Perdue; therefore, the claims against the other defendants will not be addressed.

jurisdiction in the trial court, and Rule 12(b)(6), which relates to a failure to state a claim upon which relief may be granted, on the basis of sovereign immunity. The trial court heard arguments from council concerning Perdue's motion on 17 February 2009. On 12 March 2009, the trial court denied Perdue's motion to dismiss. Perdue appeals the trial court's order.[2]

## Analysis

Perdue argues on appeal: (1) subject matter jurisdiction was properly vested in the Industrial Commission, not the superior court and (2) plaintiffs have not stated a claim for which relief may be granted because Perdue was a public officer, and, therefore, protected by sovereign immunity in his official capacity as well as his individual capacity.

### I.  Interlocutory Nature of Appeal

Perdue appeals from an interlocutory order denying his motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6); therefore, we must first determine whether the order is immediately appealable. "Interlocutory orders are those made during the pendency of an action which do not dispose of the case, but instead leave it for further action by the trial court in order to settle and determine the entire controversy." *Carriker v. Carriker*, 350 N.C. 71, 73, 511 S.E.2d 2, 4 (1999). "As a general rule, interlocutory orders are not immediately appealable." *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009).

### A.  Rule 12(b)(1) Motion

**[1]** First, Perdue claims that his Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction should be heard interlocutory because it is based on the doctrine of sovereign immunity. This Court has held that the doctrine of sovereign immunity involves a question of personal jurisdiction rather than subject matter jurisdiction. *Stahl-Rider v. State*, 48 N.C. App. 380, 269 S.E.2d 217 (1980); *Sides v. Hospital*, 22 N.C. App. 117, 205 S.E.2d 784 (1974), *modified and aff'd*, 287 N.C. 14, 213 S.E.2d 297 (1975).

> The distinction is important because the denial of a motion to dismiss for lack of subject matter jurisdiction pursuant to . . . Rule 12(b)(1) is [not immediately appealable], but the denial of a motion challenging the jurisdiction of the court over the per-

2. Plaintiffs have also filed a claim against the State of North Carolina in the Industrial Commission.

son of the defendant pursuant to . . . Rule 12(b)(2) is immediately appealable.

*Zimmer v. N.C. Dept. of Transportation*, 87 N.C. App. 132, 133-34, 360 S.E.2d 115, 116 (1987) (internal citation omitted) (holding that appeal could be heard interlocutory pursuant to Rule 12(b)(2) where the Department of Transportation claimed that under the doctrine of sovereign immunity the Industrial Commission had no jurisdiction over the person of the State).

In *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 328, 293 S.E.2d 182, 184 (1982), our Supreme Court declined to determine "whether sovereign immunity is a question of subject matter jurisdiction or whether the denial of a motion to dismiss on grounds of sovereign immunity is immediately appealable." Nevertheless, the Court recognized that N.C. Gen. Stat. § 1-277 (2009)

provides for immediate appeal of certain orders and determinations of trial judges. An order *granting* a motion to dismiss for lack of subject matter jurisdiction is immediately appealable under G.S. 1-277(a), because it determines or discontinues the action. G.S. 1-277(b) permits the immediate appeal of a ruling, whether granting or denying a motion to dismiss under Rule 12(b)(2), as to the court's jurisdiction over the defendant's person or property.

*Teachy*, 306 N.C. at 327, 293 S.E.2d at 184 (emphasis added). In sum, based on the precedent set by this Court in *Stahl-Rider* and *Sides*, the general rule is that sovereign immunity presents a question of personal jurisdiction, not subject matter jurisdiction, and denial of a motion to dismiss pursuant to Rule 12(b)(1) is not immediately appealable.

We recognize that, "interlocutory review of such an order nonetheless may be permissible if the appellant demonstrates that, under the circumstances of the particular case, the order affects a substantial right that would be jeopardized in the absence of review prior to a final determination on the merits." *Burton v. Phoenix Fabricators & Erectors, Inc.*, 185 N.C. App. 303, 305, 648 S.E.2d 235, 237 (2007). "[T]his Court has repeatedly held that appeals raising issues of governmental or sovereign immunity affect a substantial right sufficient to warrant immediate appellate review" pursuant to N.C. Gen. Stat. § 1-277(a). *Price v. Davis*, 132 N.C. App. 556, 558-59, 512 S.E.2d 783, 785 (1999). Nevertheless, this Court has declined to address interlocutory appeals of a lower court's denial of a Rule

12(b)(1) motion to dismiss despite the movant's reliance upon the doctrine of sovereign immunity. *See Meherrin Indian Tribe v. Lewis*, —— N.C. App. ——, ——, 677 S.E.2d 203, 207 (2009), *disc. review denied*, —— N.C. ——, ——, S.E.2d (2010); *N.C. Ins. Guar. Ass'n v. Board of Trs. of Guilford Technical Cmty. College*, 185 N.C. App. 518, 520-21, 648 S.E.2d 859, 860-61 (2007); *Davis v. Dibartolo*, 176 N.C. App. 142, 144-45, 625 S.E.2d 877, 880 (2006); *Data Gen. Corp. v. Cty. of Durham*, 143 N.C. App. 97, 100, 545 S.E.2d 243, 245-46 (2001). The reasoning behind these holdings is aptly stated in *Meherrin Indian Tribe*: "[T]he claim of sovereign immunity cannot be the basis for a motion to dismiss for lack of subject matter jurisdiction." N.C. App. at ——, 677 S.E.2d at 207. Perdue has not argued any other basis for immediate appeal of his Rule 12(b)(1) motion to dismiss. *Crouse v. Mineo*, 189 N.C. App. 232, 235, 658 S.E.2d 33, 35 (2008) ("An appellant bears the burden of demonstrating that an order will adversely affect a substantial right."). Accordingly, we are unable to address Perdue's arguments with regard to his Rule 12(b)(1) motion to dismiss.

## B. Rule 12(b)(6) Motion

**[2]** Perdue argues that plaintiffs have not stated a claim for relief because Perdue is a public officer, and, therefore, protected by sovereign immunity in his official capacity as well as his individual capacity. Thus, Perdue contends, the trial court erred in denying his Rule 12(b)(6) motion to dismiss. This Court has held that a denial of a Rule 12(b)(6) motion to dismiss on the basis of sovereign immunity affects a substantial right and is immediately appealable. *Meherrin Indian Tribe*, —— N.C. App. at ——, 677 S.E.2d at 207; *Anderson v. Town of Andrews*, 127 N.C. App. 599, 601, 492 S.E.2d 385, 386 (1997) (citing *EEE-ZZZ Lay Drain Co. v. N.C. Dept. of Human Resouces*, 108 N.C. App. 24, 27, 422 S.E.2d 338, 340 (1992), *overruled on other grounds by Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997)). Accordingly, we will hear Perdue's appeal with regard to the denial of his Rule 12(b)(6) motion to dismiss.

*II. Denial of Motion to Dismiss Pursuant to Rule 12(b)(6)*

## A. Standard of Review

On appeal from a motion to dismiss under Rule 12(b)(6), this Court reviews *de novo* "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted [.]" We consider the allegations in the complaint true, construe the complaint liberally, and only reverse the trial court's denial of a motion to dismiss if plaintiff is entitled

to no relief under any set of facts which could be proven in support of the claim.

*Christmas v. Cabarrus Cty.*, 192 N.C. App. 227, 231, 664 S.E.2d 649, 652 (2008) (quoting *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)), *disc. review denied*, 363 N.C. 372, 678 S.E.2d 234 (2009).

## B. Public Officer Status

**[3]** Defendant Perdue was sued in his official capacity as the county medical examiner, and in his individual capacity. Perdue claims immunity on both counts. We will examine each count separately, but we must first determine whether Perdue is a public officer of the State or a public employee. This distinction is important because "[p]ublic offic[ers] cannot be held individually liable for damages caused by mere negligence in the performance of their governmental or discretionary duties; public employees can." *Meyer*, 347 N.C. at 112, 489 S.E.2d at 888.

A public officer is someone whose position is created by the constitution or statutes of the sovereign. An essential difference between a public office and mere employment is the fact that the duties of the incumbent of an office shall involve the exercise of some portion of sovereign power. Officers exercise a certain amount of discretion, while employees perform ministerial duties. Discretionary acts are those requiring personal deliberation, decision and judgment; duties are ministerial when they are absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.

*Id.* at 113, 489 S.E.2d at 889 (internal citations and quotation marks omitted).

In North Carolina, the Chief Medical Examiner is appointed by the State Secretary of Health and Human Services. N.C. Gen. Stat. § 130A-378 (2009). The Chief Medical Examiner then appoints the various county medical examiners for three-year terms. N.C. Gen. Stat. § 130A-382 (2009). The specific duties of the medical examiner are set out in N.C. Gen. Stat. § 130A-385 (2009). Moreover, this Court has previously established that "[a] medical examiner is a public officer, and is entitled to governmental immunity if sued in his official capacity." *Epps v. Duke University*, 116 N.C. App. 305, 309, 447 S.E.2d 444, 447 (1994) (citation omitted); *see also In re Grad v. Kaasa*, 68 N.C. App. 128, 131, 314 S.E.2d 755, 758 ("It is clear that a medical examiner is a

public official . . . ."), *reversed on other grounds,* 312 N.C. 310, 321 S.E.2d 888 (1984). Plaintiffs' complaint alleged that "[a]s a county Medical Examiner, appointed by the North Carolina State Chief Medical Examiner, Dr. Perdue was, at all times relevant, a public officer . . . ." We conclude that Perdue, an appointed county medical examiner, is a public officer of the State.

## C. Official Capacity Claim

[4] Plaintiffs in this action did not bring suit against the State of North Carolina; however, "[a]ctions against officers of the State in their official capacities are actions against the State for the purposes of applying the doctrine of [sovereign] immunity." *Epps,* 116 N.C. App. at 309, 447 S.E.2d at 447; *see also Mullis v. Sechrest,* 347 N.C. 548, 554, 495 S.E.2d 721, 725 (1998) ("[O]fficial-capacity suits are merely another way of pleading an action against the governmental entity."). "It is a fundamental rule that sovereign immunity renders this state . . . immune from suit absent express consent to be sued or waiver of the right of sovereign immunity." *Data Gen. Corp.,* 143 N.C. App. at 100, 545 S.E.2d at 246 (citations omitted).

Perdue claims that plaintiffs failed to allege a waiver of the State's sovereign immunity. "In order to overcome a defense of [sovereign] immunity, the complaint must specifically allege a waiver of [sovereign] immunity. Absent such an allegation, the complaint fails to state a cause of action." *Paquette v. County of Durham,* 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) (internal citations omitted), *disc. review denied,* 357 N.C. 165, 580 S.E.2d 695 (2003). "This requirement does not, however, mandate that a complaint use any particular language. Instead, consistent with the concept of notice pleading, a complaint need only allege facts that, if taken as true, are sufficient to establish a waiver by the State of sovereign immunity." *Fabrikant v. Currituck Cty.,* 174 N.C. App. 30, 38, 621 S.E.2d 19, 25 (2005). Here, plaintiffs sufficiently alleged in their complaint that the State has waived immunity "by statute"; however, we must still determine if plaintiffs have properly alleged a claim for which relief may be granted against Perdue in his official capacity.

[5] N.C. Gen. Stat. § 143-291 *et seq.* (2009), commonly known as the Tort Claims Act, provides a limited waiver of sovereign immunity for negligence actions against public officers when acting in their official capacity. "The State may be sued in tort only as authorized in the Tort Claims Act." *Guthrie v. State Ports Authority,* 307 N.C. 522, 535, 299 S.E.2d 618, 625 (1983).

The effect of the Tort Claims Act was twofold. First, the State partially waived its sovereign immunity by consenting to direct suits brought as a result of negligent acts committed by its employees in the course of their employment. Second, the Act provided that the forum for such direct actions would be the Industrial Commission, rather than the State courts.

*Teachy,* 306 N.C. at 329, 293 S.E.2d at 185.

Plaintiffs in this case have brought suit against a public officer of the State in superior court, seeking monetary relief. In *Harwood v. Johnson,* 92 N.C. App. 306, 307, 374 S.E.2d 401, 403 (1988), *aff'd in part and reversed in part on other grounds,* 326 N.C. 231, 388 S.E.2d 439 (1990), the plaintiff brought a negligence action against the Secretary of the Department of Correction, the Chairman and members of the Parole Commission, and a parole case analyst, in their official and individual capacities. Plaintiff also sued the Superintendent of the Rowan County Prison Unit in his official capacity only. *Id.* The defendants filed a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), which was denied by the trial court. *Id.* at 308, 374 S.E.2d at 403. On appeal, this Court only addressed the denial of the motion to dismiss pursuant to Rule 12(b)(6). *Id.* The Court ultimately held:

The doctrine of sovereign immunity—that the State cannot be sued in its own courts, or in any other, without its consent—is firmly established in the common law of North Carolina. Our Supreme Court has also established that when an action is brought against individual state officers or employees in their official capacities, the action is one against the State for the purposes of applying the doctrine of sovereign immunity. We hold here that there can be no monetary award against any named defendants in his or her official capacity, because the award would in essence be against the State and the State has not consented to suit in this forum. Therefore, dismissal of plaintiff's state law claims for monetary damages against all defendants in their official capacities was correct and we affirm that part of the trial court's order.

*Id.* at 309, 374 S.E.2d at 403-04 (internal citations omitted). Upon discretionary review, our Supreme Court upheld this Court's ruling with regard to that particular issue, stating:

Since the doctrine of sovereign immunity applies, a suit cannot be maintained in the superior court against defendants in

their official capacities. The decision of the Court of Appeals affirming the dismissal of the complaint as to the Secretary of the Department of Correction, the Chairman and Members of the Parole Commission, and the Superintendent of the Rowan County Prison Unit, in their official capacities, is affirmed.

*Harwood v. Johnson,* 326 N.C. 231, 238, 388 S.E.2d 439, 443 (1990). Based upon the precedent set in *Harwood,* we hold that plaintiffs in this case have not stated a claim for which relief may be granted in superior court. Plaintiffs have sued a public officer in his official capacity, which is equivalent to a suit against the State. *Epps,* 116 N.C. App. at 309, 447 S.E.2d at 447. The State has not consented to be sued in the superior court, therefore, the trial court erred in denying Perdue's Rule 12(b)(6) motion to dismiss the claim against him in is official capacity.

We recognize that while the State may not be directly sued in superior court for negligence, "the State may be joined as a third-party defendant in the state courts in an action for contribution or in an action for indemnification." *Meyer,* 347 N.C. at 109, 489 S.E.2d at 887; *see also Teachy,* 306 N.C. at 331, 293 S.E.2d at 186 (after being sued by decedent's wife for negligent operation of motor vehicle, defendant brought third-party complaint against Department of Transportation, alleging negligence in maintenance of traffic light where decedent was killed); N.C. Gen. Stat. § 1A-1, Rule 14(c) (2009) ("Notwithstanding the provisions of the Tort Claims Act, the State of North Carolina may be made a third party under subsection (a) or a third-party defendant under subsection (b) in any tort action. In such cases, the same rules governing liability and the limits of liability of the State and its agencies shall apply as is provided for in the Tort Claims Act."); N.C. Gen. Stat. § 1B-1(h) (2009) ("The provisions of this Article shall apply to tort claims against the State. However, in such cases, the same rules governing liability and the limits of liability shall apply to the State and its agencies as in cases heard before the Industrial Commission. The State's share in such cases shall not exceed the pro rata share based upon the maximum amount of liability under the Tort Claims Act."). As seen in *Teachy,* to bring in the State as a third-party, the action must properly originate in superior court against a defendant not protected by official sovereign immunity. 306 N.C. at 331, 293 S.E.2d at 186. That is not the case here where plaintiffs have, in effect, brought a direct action against the State in a forum where the State has not consented to be sued.

**[6]** Plaintiffs argue that if this Court declines to affirm the trial court's order outright, then this case should be remanded to the trial court for a determination of whether the Department of Health and Human Services ("DHHS"), the state agency that appointed Perdue, waived sovereign immunity through the purchase of liability insurance. Plaintiffs claim that if DHHS purchased liability insurance, then jurisdiction would lie in the superior court for amounts up to the limits of the insurance coverage. Plaintiffs argument is without merit.

Plaintiffs point to N.C. Gen. Stat. § 143-291(b), which states: "If a State agency, otherwise authorized to purchase insurance, purchases a policy of commercial liability insurance providing coverage in an amount at least equal to the limits of the State Tort Claims Act, such insurance coverage shall be in lieu of the State's obligation for payment under this Article." In *Wood v. N.C. State Univ.*, 147 N.C. App. 336, 556 S.E.2d 38 (2001), *appeal dismissed and disc. review denied*, 355 N.C. 292, 561 S.E.2d 887 (2002), this Court addressed whether N.C. Gen. Stat. § 143-291(b) waives the State's sovereign immunity beyond that established in N.C. Gen. Stat. § 143-291(a). The Court determined:

> Strictly construing the language at issue here, we believe that the phrase "such insurance coverage shall be in lieu of the State's obligation for payment under this Article," N.C.G.S. § 143-291(b), is more consistent with a designation of the source of payment than with a designation of the forum for adjudication.
>
> In the absence of language explicitly expressing such intent, we are constrained to hold that the General Assembly did not intend N.C.G.S. § 143-291(b) to waive the State's sovereign immunity beyond that specified in N.C.G.S. § 143-291(a), and that *jurisdiction over tort claims against the State and its agencies remains exclusively with the Industrial Commission.*

*Wood*, 147 N.C. App. at 343, 556 S.E.2d at 43 (emphasis added).

Plaintiffs cite to this Court's holding in *Parham v. Iredell County Dept. of Social Services*, 127 N.C. App. 144, 148, 489 S.E.2d 610, 613 (1997), where we concluded that the Iredell Department of Social Services was acting as a state agency "during its involvement in adoption proceedings," but that the trial court would, nevertheless, have jurisdiction over the matter if the county purchased liability insurance. Plaintiffs' reliance on *Parham* is misplaced. The holding in

*Parham* was based on this Court's erroneous determination in *Meyer* that a county department of social services ("DSS") is a state agency for purposes of the Tort Claims Act, but if DSS purchased liability insurance, then the Industrial Commission was divested of jurisdiction over the claim. The holding in *Meyer* was premised on a perceived conflict between N.C. Gen. Stat. § 143-291 and N.C. Gen. Stat. § 153A-435 (2009), which provides that a county may purchase liability insurance, but purchase of such insurance waives its governmental immunity. This Court held:

> Under the plain language of G.S. 143-291(b), the Tort Claims Act no longer controls the payment of damages where a State agency has procured liability insurance with policy limits equal to or greater than the $100,000 cap provided for in G.S. 143-291(a). It follows logically that G.S. 143-291(b) requires that the Tort Claims Act is no longer controlling with regard to jurisdiction once a governmental entity has procured liability insurance with policy limits equal to or greater than $100,000. Jurisdiction is then controlled by the statute authorizing the governmental entity to purchase liability insurance.

*Meyer*, 122 N.C. App. at 513, 471 S.E.2d at 427. The Supreme Court reversed this Court and held that DSS is not a *state agency* entitled to *sovereign immunity* under the Tort Claims Act, despite the fact that it may be acting as a *state agent*; therefore, DSS could be sued in superior court if it waived *governmental immunity* through the purchase of liability insurance. *Meyer*, 347 N.C. at 108, 489 S.E.2d at 886. Based on the Supreme Court's holding in *Meyer*, there is, in fact, no conflict between N.C. Gen. Stat. § 143-291 and N.C. Gen. Stat. § 153A-435 in this instance.

Accordingly, we find that *Wood* is controlling on this issue, not this Court's holdings in *Meyer* or *Parham*. Consequently, even if DHHS has purchased liability insurance, the proper forum for this case is the Industrial Commission and plaintiffs have not stated a claim for relief in the superior court against defendant Perdue in his official capacity.

[7] Finally, plaintiffs argue that in the interest of judicial economy, they should be permitted to maintain an action against Perdue in superior court along with their other claims against the county and its employees since two trials would "constitute a waste of judicial time and resources." Plaintiffs neglect to mention in their brief that they have already filed a claim against the State in the Industrial Com-

mission. Therefore, two actions already exist in this matter. Moreover, as discussed *supra,* the Tort Claims Act sets out the parameters of the State's waiver of sovereign immunity. Here, the State has not consented to be sued in the trial court and we cannot set aside statutory restrictions even in the name of judicial economy. *Riviere v. Riviere,* 134 N.C. App. 302, 304, 517 S.E.2d 673, 675 (1999) ("Where the language of a statute is clear and unambiguous, this Court is bound by the plain language of the statute."). Based on the foregoing analysis, we hold that the trial court erred in denying Perdue's Rule 12(b)(6) motion to dismiss the claims against him in his official capacity.

## D. Individual Capacity Claim

[8] In their individual capacity claim against Perdue, plaintiffs rely on the same allegations of fact that were stated in their claim for general negligence against Perdue; however, they further allege that his actions were "[in] bad faith, or willful, wanton, corrupt, malicious or recklessly indifferent[,]" and that Perdue acted outside the scope of his duties as a public officer. Perdue denies these claims and argues that, as a public officer acting within the scope of his duties, he is entitled to immunity from suit.

"[I]f a public officer is sued in his individual capacity, he is entitled to immunity for actions constituting mere negligence, but may be subject to [personal] liability for actions which are *corrupt, malicious or outside the scope of his official duties." Epps,* 116 N.C. App. at 309, 447 S.E.2d at 447 (emphasis added).

> The essence of the doctrine of public official immunity is that public officials engaged in the performance of their governmental duties involving the exercise of judgment and discretion, and acting within the scope of their authority, may not be held liable for such actions, in the absence of malice or corruption.

*Price,* 132 N.C. App. at 562, 512 S.E.2d at 787. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *In re Grad v. Kaasa,* 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). " 'An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.' " *Id.* at 313, 321 S.E.2d at 890-91 (quoting *Givens v. Sellars,* 273 N.C. 44, 50, 159 S.E.2d 530, 535 (1968)). "[A] conclusory allegation that a public official acted

willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion." *Meyer*, 347 N.C. at 114, 489 S.E.2d at 890. Upon review of the allegations in plaintiffs' complaint, we hold that plaintiffs have not stated a claim for which relief may be granted against Perdue in his individual capacity.

Plaintiffs allege that the following acts were perpetrated outside and beyond Perdue's duties and authority:

a. failing to determine if he was dealing with someone who was dead prior to beginning a forensic examination of that person;

b. failing, upon three separate and specific inquiries, to determine if Green was dead or alive at the scene;

c. directing that Green be removed from the scene to the morgue when Green was not in fact dead;

d. attempting to determine the cause of death of someone who was not dead;

e. disregarding evidence of breathing while examining Green's exposed chest;

f. concluding that the twitching in Green's right upper eyelid was because of muscle spasms "like a frog leg lumping in a frying pan" when Green was in fact alive;

g. holding on to his erroneous conclusion that Green was dead when questioned whether Green was alive after he, himself, and others observed Green's right eyelid twitch several times;

h. dissuading the paramedics and first responders from checking or rechecking Green for vital signs or otherwise reevaluating Green's condition;

i. handling Green as if he were a corpse when Green was, in fact, alive; and

j. failing to provide any medical treatment.

The allegations establish that Perdue acted under the assumption that Green was deceased and that he disregarded signs that Green was still alive; however, we find that these allegations do not support plaintiffs' assertion that Perdue's actions were "[in] bad faith, or willful, wanton, corrupt, malicious or recklessly indifferent . . . ."

**GREEN v. KEARNEY**

[203 N.C. App. 260 (2010)]

Moreover, Perdue did not act outside the scope of his employment. N.C. Gen. Stat. § 130A-385 states in pertinent part:

Upon receipt of a notification under G.S. 130A-383, the medical examiner shall take charge of the body, make inquiries regarding the cause and manner of death, reduce the findings to writing and promptly make a full report to the Chief Medical Examiner on forms prescribed for that purpose.

Upon arriving at the scene of an accident where an individual has been declared dead, the medical examiner is not required by statute to conduct his or her own examination to ascertain whether the individual is dead. The medical examiner need only take charge of the deceased's body. *Id.* Certainly, a medical examiner, while ascertaining the "cause and manner of death," should ensure that the individual is, in fact, dead where questions have been raised as to whether the individual is actually alive; however, the failure to investigate in such a scenario does not place the medical examiner outside the scope of his authority.

We find that Perdue's actions, while arguably negligent, did not rise to the level of malicious or corrupt conduct, nor was he acting outside the scope of his authority as a county medical examiner. As stated *supra,* Perdue is a state officer and is afforded sovereign immunity for claims against him in his individual capacity for mere negligence. *Epps,* 116 N.C. App. at 309, 447 S.E.2d at 447. Accordingly, we hold that the trial court erred in denying Perdue's Rule 12(b)(6) motion to dismiss the claims against him in his individual capacity.

### Conclusion

Based on the foregoing we dismiss Perdue's appeal of the trial court's denial of his Rule 12(b)(1) motion to dismiss. We reverse the trial court's order denying Perdue's motion to dismiss the claims against him in his official and individual capacity pursuant to Rule 12(b)(6).

Dismissed in part; reversed in part.

Judges BRYANT and JACKSON concur.