IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-356

No. COA20-472

Filed 20 July 2021

Orange County, No. 19 CVS 1243

PAUL STEVEN WYNN, Plaintiff,

v.

REX FREDERICK, in his official capacity, and GREAT AMERICAN INSURANCE COMPANY, Defendants.

Appeal by Defendants from the order entered 15 January 2020 by Judge John O. Craig, III in Orange County Superior Court. Heard in the Court of Appeals 23 March 2021.

> *Carlos E. Mahoney and Barry D. Nakell, for Plaintiff-Appellee.*

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Kathryn H. Shields, for Defendant-Appellant Frederick.*

> *David O. Lewis and F. Joseph Nealon, for Defendant-Appellant Great American Insurance Company.*

GORE, Judge.

¶ 1 Rex Frederick ("Defendant") appeals from orders entered 15 January 2020 denying his motions to dismiss Paul Wynn's ("Plaintiff") claims against him.[1] We

---

[1] The trial court also denied Defendant Great American Insurance Company's motion to dismiss under Rule 12(b)(6). Defendant Great American Insurance Company filed a notice of appeal, but the appeal was dismissed at Great American's request on 28 August 2020.

affirm the trial court's order.

## I. Background

In December 2016, Plaintiff owned two properties in Mebane, North Carolina, one in which he lived and another which he rented out to his sister, Judy Wynn ("Ms. Wynn"), and her twenty-four-year-old son, Robert Norman Morris ("Mr. Morris). Since Mr. Morris was a teenager, he experienced severe mental health issues and was diagnosed with schizoaffective disorder, schizophrenia, and bipolar disorder. In addition, Mr. Morris engaged in significant alcohol and drug use and was diagnosed with substance abuse disorders. When he was not taking his medications, Mr. Morris, at times, would become violent and threatening to others. On several occasions Mr. Morris was hospitalized at UNC Hospitals, often on an involuntary commitment basis, for inpatient treatment of acute psychiatric symptoms. This resulted in Mr. Morris being under the care of the UNC Center for Excellence in Community Mental Health's Assertive Community Treatment (ACT) team.[2] The ACT team regularly visited Mr. Morris at his home to monitor his conditions and medication compliance. Additionally, Mr. Morris received psychiatric care and treatment from Dr. Austin Hall, the ACT team Medical Director. Prior to the events of this case, Mr. Morris was involuntarily committed three times in 2016.

---

[2] The ACT team provides support for individuals with severe mental illness who live at home in Orange County.

During the week of 12 December 2016, Mr. Morris was not taking his medication and his mental health had deteriorated. On 14 December 2016, Ms. Wynn called 911 after Mr. Morris drained her car battery and hid the keys to Plaintiff's spare vehicle, in order to prevent Ms. Wynn from leaving the home. The Orange County Sheriff's Office responded and confiscated a knife from Mr. Morris. Ms. Wynn informed the ACT team that Mr. Morris was not taking his medication, and she claimed Mr. Morris had not slept for three days, spent the night guarding the house with a crossbow, and had developed an unreasonable fear for Ms. Wynn's safety.

On the morning of 16 December 2016, Dr. Hall met with Ms. Wynn and Mr. Morris at their home. After speaking with them and observing Mr. Morris, Dr. Hall determined that Mr. Morris needed to be involuntarily committed because he was mentally ill and dangerous to himself and others. Dr. Hall prepared an Affidavit and Petition for Involuntary Commitment of Mr. Morris, signed it in front of a notary public, and faxed it to the Orange County Magistrate's Office, where it was received by Defendant, who is an Orange County Magistrate. The Affidavit and Petition provided Mr. Morris's home address as well as the contact information for Dr. Hall. At 2:17 p.m. that day, Defendant issued a Findings and Custody Order for Involuntary Commitment ("Custody Order"). Defendant faxed the Custody Order to UNC Hospitals and not the Orange County Sheriff's Department. As a result, Mr. Morris was not served with the Custody Order on 16 December 2016.

¶ 5        On the morning of 17 December 2016, Dr. Hall called Ms. Wynn to ask if the Sheriff's Office had picked up Mr. Morris, Ms. Wynn informed him they had not. At approximately 5:30 a.m. Dr. Hall called Defendant at the Orange County Magistrate's Office to inquire about the status of the Custody Order. Defendant told Dr. Hall he sent the Custody Order to UNC Hospitals because he believed Mr. Morris was at the hospital. When Dr. Hall informed Defendant Mr. Morris was not at the hospital, but at home, Defendant asked Dr. Hall to fax the involuntary commitment documents back to him so that he could reissue the order, because he no longer had the Affidavit and Petition or the Custody Order. Dr. Hall did not have the documents immediately accessible, nor did he have immediate access to his fax machine and was not able to fax the documents to the Magistrate's Office until 9:27 a.m. At 11:02 a.m., Tony Oakley, another Orange County Magistrate, contacted the Orange County Sheriff's Office for the delivery of the Custody Order. At approximately 11:20 a.m. Deputy Hester received the faxed Custody Order and began driving to Mr. Morris's home to serve the Order.

¶ 6        Around 11:00 a.m. on 17 December 2016, Plaintiff went to Ms. Wynn's house to jump start her car. After jump starting the car, Ms. Wynn invited Plaintiff inside for some refreshments. At this time, Plaintiff did not know that Mr. Morris was off his medication and experiencing an acute psychotic episode. When Plaintiff entered the house, he saw Mr. Morris in the family room, but did not see that Mr. Morris had

a crossbow. While Plaintiff was in the kitchen, Mr. Morris used the crossbow to shoot Plaintiff in the left side of the neck with an arrow. The arrow punctured Plaintiff's cervical spine, spinal cord, and left vertebral artery, instantly paralyzing Plaintiff. Ms. Wynn called 911 at 11:18 a.m., and Deputy Hester arrived at the home at approximately 11:36 a.m. Orange County EMS arrived shortly thereafter. At that time, Mr. Morris was taken into custody by the Orange County Sheriff's Office.

¶ 7      On 17 September 2019, Plaintiff filed a complaint against Defendant, in his official capacity as a Magistrate, and Great American Insurance Company seeking damages in the amount of $100,000 under Defendant's official bond issued by Great American Insurance Company. Defendant filed a motion to dismiss claiming sovereign immunity, absolute judicial immunity, and that Plaintiff has otherwise failed to state a claim upon which relief can be granted.[3] Great American Insurance Company filed a motion to dismiss joining in and adopting Defendant's motion to dismiss as Defendant's insurer. On 8 January 2020, the trial court found that Defendant Frederick is not entitled to sovereign immunity or judicial immunity and denied Defendant Frederick and Defendant Great American Insurance Company's motions to dismiss. Defendant gave notice of appeal on 11 February 2020.

II.     Scope of Appellate Review

---

[3] Defendant also initially claimed public official immunity, however, at the hearing on the motions to dismiss he waived the motion to dismiss on the basis of public official immunity.

¶ 8    As an initial matter, we must address the scope of this Court' jurisdiction over Defendant's interlocutory appeal. The trial court's denial of Defendant's motion to dismiss is an interlocutory order. Generally, "a party has no right to immediate appellate review of an interlocutory order." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). However, a party may immediately appeal from an interlocutory order that affects a substantial right. N.C. Gen. Stat. § 1-277(a) (2020); N.C. Gen. Stat. § 7A-27(b)(3)(a) (2020).

¶ 9    The denial of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on sovereign immunity does not affect a substantial right, therefore, we cannot review a trial court's order denying a motion to dismiss under Rule 12(b)(1). *Can Am S., LLC v. State*, 234 N.C. App. 119, 122, 759 S.E.2d 304, 307 (2014) (citations omitted); *State ex rel. Cooper v. Kinston Charter Acad.*, 268 N.C. App. 531, 535, 836 S.E.2d 330, 335 (2019). However, the denial of a Ruble 12(b)(6) motion to dismiss based on sovereign immunity affects a substantial right and is immediately appealable. *Green v. Kearney*, 203 N.C. App. 260, 266, 690 S.E.2d 755, 761 (2010). Similarly, claims of judicial immunity affect a substantial right and are reviewable on interlocutory appeal. *See Royal Oak Concerned Citizens Ass'n v. Brunswick Cnty.*, 233 N.C. App. 145, 149, 756 S.E.2d 833, 836 (2014).

III.    Standard of Review

¶ 10 At the outset we note that the failure of the trial court to identify which civil procedure rule or rules supported the dismissal of particular claims obfuscates appellate review. Defendant moved to dismiss Plaintiff's claims based on both North Carolina Civil Procedure Rules 12(b)(1) and 12(b)(6). However, the trial court did not state on which Rule it based its denial of Defendant's Motion to Dismiss. This hinders appellate review because, while we apply a *de novo* standard when reviewing either a Rule 12(b)(1) or 12(b)(6) dismissal, the scope of review varies. *See Holton v. Holton*, 258 N.C. App. 408, 414, 813 S.E.2d 649, 654 (2018). Review of a Rule 12(b)(6) dismissal is confined to the face of the pleadings while review of a Rule 12(b)(1) dismissal may take into consideration any outside evidence or hold an evidentiary hearing. *Cunningham v. Selman*, 201 N.C. App. 270, 280, 689 S.E.2d 517, 524 (2009). Here, the trial court's order determined "the factual allegations in the Complaint . . . state a claim upon which relief can be granted . . . ." Therefore, we conclude that the trial court must have denied Defendant's motion based on Rule 12(b)(6), and treats it as such upon review.

¶ 11 We review an appeal from a Rule 12(b)(6) motion to dismiss *de novo,* to determine whether, as a matter of law, the allegations of the complaint are sufficient to state a claim upon which relief may be granted. *Green*, 203 N.C. App. at 266–67, 690 S.E.2d at 761. "We consider the allegations in the complaint true, construe the complaint liberally, and only reverse the trial court's denial of a motion to dismiss if

plaintiff is entitled to no relief under any set of facts which could be proven in support of the claim." *Id.* We consider well-pleaded factual allegations of the complaint as true for purposes of a 12(b)(6) motion, conclusions of law or deductions of fact are not admitted. *Dalenko v. Wake Cnty. Dep't of Hum. Servs.*, 157 N.C. App. 49, 56, 578 S.E.2d 599, 604 (2003). "A complaint is not sufficient to withstand a motion to dismiss if an insurmountable bar to recovery appears on the face of the complaint." *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 166 (1970).

## IV.   Sovereign Immunity

"Sovereign immunity ordinarily grants the state, its counties, and its public officials, in their official capacity, an unqualified and absolute immunity from law suits." *Paquette v. Cnty. of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) (citations omitted).

North Carolina General Statutes § 58-76-5 provides "[e]very person injured by the neglect, misconduct, or misbehavior in office of any register, surveyor, sheriff, coroner, county treasurer, or other officer, may institute a suit . . . upon their respective bonds. . . ." N.C. Gen. Stat. § 58-76-5. This statute works to waive sovereign immunity for officials covered by statutory bonds. This court has stated "[t]he statutory mandate that the sheriff furnish a bond works to remove the sheriff from the protective embrace of governmental immunity, but only where the surety is joined as a party to the action." *Messick v. Catawba Cnty*, 110 N.C. App. 707, 715, 431 S.E.2d

489, 494 (1993). Immunity is only waived in tort cases and to the extent of the amount of the bond. *Hill v. Medford*, 158 N.C. App. 618, 623, 582 S.E.2d 325, 329 (2003) (Martin, J. dissenting), *per curiam rev'd based on the dissenting opinion*, 357 N.C. 650, 588 S.E.2d 467 (2003).

¶ 14        Defendant argues that sovereign immunity was not waived in this case because "other officers," as used in § 58-76-5, does not include magistrates. Defendant argues that if the General Assembly intended to include magistrates within the reach of § 58-76-5 they would have explicitly included magistrates in the list of applicable officers. Further, Defendant argues that the legislature did not intend for magistrates to be included within the reach of § 58-76-5 because the listed officers are all county officers, therefore, "other officers" only applies to other county officers. As a result, Defendant asserts that there is no plain and unmistakable waiver here because § 58-76-5 does not specifically identify magistrates. *See Wood v. N.C. State Univ.*, 147 N.C. App. 336, 338, 556 S.E.2d 38, 40 (2001) (holding that for sovereign immunity to be waived it must be by a "plain, unmistakable mandate of the lawmaking body."). However, this argument is not persuasive because § 58-76-5 gives a plain and unmistakable waiver of sovereign immunity, and as long as magistrates are found to be "other officers" they are included within the mandate of the statute.

¶ 15        Defendant argues § 58-76-5's "other officers" does not include magistrates because the North Carolina Torts Claims Act provides a remedy for negligence of

magistrates. N.C. Gen. Stat. § 143-291, *et seq*. We do not find this persuasive. Section 58-76-5 clearly covers sheriffs, as they are enumerated in the list of applicable state officers in the statute, however, there are other statutes that provide for remedies of the negligence of sheriffs. *See Myers v. Bryant*, 188 N.C. App. 585, 588, 655 S.E.2d 882, 885 (2008). Therefore, § 58-76-5 clearly was not intended to be the sole remedy for negligence of officials who are covered by bonds. The existence of an alternative remedy does not preclude § 58-76-5 from being applicable here.

¶ 16 There are several cannons of statutory interpretation, including plain language of the statute. "An analysis utilizing the plain language of the statute and the canons of construction must be done in a manner which harmonizes with the underlying reason and purpose of the statute." *Elec. Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). Here, the plain language of the statute states "other officers." Further, the underlying reason and purpose of § 58-76-5 is to provide a remedy for those harmed by the "neglect, misconduct, or misbehavior" of officers who are statutorily required to be protected by a bond. If the General Assembly truly intend to only include county officers, as Defendant argues, the plain language of the statute would have read "other county officers."

¶ 17 Therefore, we find that magistrates are included within the meaning of "other officers" under § 58-76-5 and sovereign immunity was waived.

V.    Judicial Immunity

¶ 18     Defendant argues if we find the General Assembly waived sovereign immunity in this case, that Plaintiff's claims are nonetheless barred by judicial immunity. Judicial immunity, like sovereign immunity, presents an absolute bar to recovery. *Fuquay Springs v. Rowland*, 239 N.C. 299, 301, 79 S.E.2d 774, 776 (1954). Judicial immunity is "available for individuals in actions taken while exercising their judicial function." *Price v. Calder*, 240 N.C. App. 190, 193, 770 S.E.2d 752, 754 (2015). Magistrates are judicial officials entitled to judicial immunity. *See Foust v. Hughes*, 21 N.C. App. 268, 270, 204 S.E.2d 230, 231 (1974).

¶ 19     However, the definition of judicial immunity demonstrates the difference in application of judicial immunity from sovereign immunity. Judicial immunity applies to *individuals*, *Price*, 240 N.C. App. at 193, 770 S.E.2d at 754, while sovereign immunity applies to "the state, its counties, and its public officials*, in their official capacity*." *Paquette*, 155 N.C. App. at 418, 573 S.E.2d at 717 (emphasis added). These differences show that the doctrines of sovereign immunity and judicial immunity are not intended to be parallels applicable under the same circumstances. Therefore, we conclude sovereign immunity applies when the government or a public official are sued in their official capacity while judicial immunity is an available defense for judicial officers sued as individuals. Here, Plaintiff only sued Defendant in his official capacity. Therefore, judicial immunity is not applicable in this cause of action.

VI.     Conclusion

¶ 20        For the foregoing reasons we find that magistrates are included in "other officers" under N.C. Gen. Stat. § 58-76-5, and therefore, sovereign immunity was waived. Further, we find that because Defendant was sued exclusively in his official capacity the defense of judicial immunity is not applicable in this case. As a result, we conclude that the trial court did not err by denying Defendant's motion to dismiss and affirm the trial court's order.


        AFFIRMED.

        Judge DIETZ concurs.

        Judge MURPHY concurs in result only.