LARRY DONNELL GREEN, BY AND THROUGH HIS GUARDIAN AD LITEM, SHARON CRUDUP; LARRY ALSTON, INDIVIDUALLY, AND RUBY KELLY, INDIVIDUALLY, PLAINTIFFS
v.
WADE R. KEARNY, II; PAUL KILMER; KATHERINE ELIZABETH LAMELL; PAMELA BALL HAYES[;] RONNIE WOOD[;] PHILLIP GRISSOM, JR.; DR. J.B. PERDUE, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY AS MEDICAL EXAMINER OF FRANKLIN COUNTY; LOUISBURG RESCUE AND EMERGENCY MEDICAL SERVICES, INC.; FRANKLIN COUNTY EMERGENCY MEDICAL SERVICES; EPSOM FIRE AND RESCUE ASSOCIATION, INC.; AND FRANKLIN COUNTY, NORTH CAROLINA, A BODY POLITIC, DEFENDANTS

No. COA12-678

Filed 5 February 2013

**1. Costs—negligent infliction of emotional distress—summary judgment—plaintiffs still parties**

The trial court did not lack the authority to find plaintiffs Alston and Kelly liable for costs incurred after the trial court granted summary judgment in favor of defendants with respect to plaintiffs' negligent infliction of emotional distress claims. As plaintiffs Alston and Kelly never requested the trial court to issue a final judgment as to them, under the plain language of Rule 54(b), they remained parties to the action and remained liable for costs incurred throughout the pendency of this case.

---

**2. Costs—negligent infliction of emotional distress—after summary judgment granted—not contrary to public policy**

The trial court's order taxing costs against plaintiffs which were incurred after the trial court granted summary judgment in favor of defendants with respect to plaintiffs' claims was not contrary to public policy encouraging settlements. Plaintiffs' argument rested on the rights of a hypothetical set of parties who, after having settled, are taxed with costs incurred after the settlement of their claims, and the Court does not give advisory opinions.

**3. Costs—negligent infliction of emotional distress—motion timely filed**

The trial court did not err in taxing costs against plaintiffs in a negligent infliction of emotional distress claim as defendants' motion was filed within a reasonable time after the results of the litigation were known.

**4. Costs—not taxed against guardian ad litem**

Plaintiffs' argument that the trial court erroneously taxed costs against Mr. Green's guardian ad litem was without merit as the trial court did not tax costs against the guardian ad litem.

Judge STEELMAN, concurring in part and dissenting in part.

Appeal by plaintiffs from order entered 8 February 2010 by Judge Henry W. Hight, Jr., in Franklin County Superior Court. Heard in the Court of Appeals 22 October 2012.

*Bell & Vincent-Pope, P.A., by Judith M. Vincent-Pope, for Plaintiff-appellants.*

*Troutman Sanders LLP, by Gary S. Parsons and Whitney S. Waldenberg, for Defendant-appellees Hayes, Wood, and Louisburg Rescue.*

*Young Moore and Henderson, P.A., by David M. Duke, Brian O. Beverly, and Michael Rainey, for Defendant-appellee Kearney.*

ERVIN, Judge.

Plaintiffs Larry Donnell Green, through his guardian *ad Litem* Sharon Crudup; Larry Alston; and Ruby Kelly appeal from an order granting a motion for costs filed by Defendants Wade R. Kearney, II; Pamela Ball Hayes; Ronnie Wood; and Louisburg Rescue and

Emergency Services, Inc. On appeal, Plaintiffs contend that the trial court erroneously granted Defendants' motion for costs on the grounds that (1) the trial court lacked authority to find Mr. Alston or Ms. Kelly liable for costs incurred after the trial court granted summary judgment in favor of Defendants with respect to Mr. Alston and Ms. Kelly's negligent infliction of emotional distress claims; (2) Defendants' motion for costs was untimely; and (3) the order taxing costs against Mr. Alston and Ms. Kelly was contrary to public policy. In addition, Plaintiffs argue that, to the extent, if any, that the trial court taxed costs against Ms. Crudup, it lacked the authority to do so. After careful consideration of Plaintiff's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court did not err by taxing costs against Mr. Alston and Ms. Kelly, that the trial court did not tax costs against Ms. Crudup, and that the trial court's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

The present proceeding represents the third time that this Court has been called upon to consider issues arising from an accident in which Mr. Green was injured on 24 January 2005. *See Green v. Kearney*, 203 N.C. App. 260, 262, 690 S.E.2d 755, 758-59 (2010) ("*Green I*"), and *Green v. Kearney*, ___ N.C. App ___, 719 S.E.2d 137 (2011) ("*Green II*"). We summarized the underlying facts in our opinion in *Green I* as follows:

> The facts as alleged in plaintiffs' complaint show that on 24 January 2005, at approximately 8:53 p.m., emergency services were dispatched in Franklin County, North Carolina to the scene of an accident involving a pedestrian—Green—and a motor vehicle. Green suffered an open head wound as a result of the accident. Defendant Wade Kearney ("Kearney") with the Epsom Fire Department was the first to arrive at the scene and checked Green for vital signs. Kearney determined that Green was dead and did not initiate efforts to resuscitate him.
>
> Several minutes later, defendants Paul Kilmer ("Kilmer") and Katherine Lamell ("Lamell") with Franklin County EMS arrived. Kearney asked Kilmer to verify that Green did not have a pulse, but Kilmer declined to do so, stating that Kearney had already checked and that was suf-

ficient. Without checking the pupils or otherwise manually rechecking for a pulse, Kearney and Kilmer placed a white sheet over Green's body.

At approximately 9:00 p.m., defendants Pamela Hayes ("Hayes") and Ronnie Wood ("Wood") with the Louisburg Rescue Unit arrived at the scene. After being informed by Kearney and Kilmer that Green was dead, neither Hayes nor Wood checked Green for vital signs. At around 9:31 p.m., Perdue, the Franklin County Medical Examiner, arrived at the scene. He first conducted a survey of the scene, taking notes regarding the location of Green's body and the condition of the vehicle that struck him. Once the Crime Investigation Unit arrived, Perdue inspected Green's body. While Perdue was examining Green, eight people saw movement in Green's chest and abdomen. Kearney asked Perdue whether Green was still breathing and Perdue responded: "That's only air escaping the body." Once Perdue finished examining Green, he directed that Green should be taken to the morgue located at the Franklin County jail.

At approximately 10:06 p.m., Green was transported to the morgue by Hayes and Wood where Perdue examined him. Perdue lifted Green's eyelids, smelled around Green's mouth to determine the source of an odor of alcohol that had been previously noted, and drew blood. During this particular examination, Perdue, Hayes, and Wood all observed several twitches in Green's upper right eyelid. Upon being asked if he was sure Green was dead, Perdue responded that the eye twitch was just a muscle spasm. Plaintiffs claim that Hayes did not feel comfortable with Perdue's response and went outside to report the eye twitch to Lamell. Hayes then returned inside and asked Perdue again if he was sure Green was dead. Perdue reassured Hayes that Green was, in fact, dead. Green was then placed in a refrigeration drawer until around 11:23 p.m. when State Highway Patrolman Tyrone Hunt ("Hunt") called Perdue and stated that he was trying to ascertain the direction from which Green was struck. To assist Hunt, Perdue removed Green from the drawer and unzipped the bag in which he was sealed. Perdue then noticed movement in Green's

abdomen and summoned emergency services. Green was rushed to the hospital where he was treated from 25 January 2005 to 11 March 2005. Green was alive at the time this action was brought. His exact medical condition is unknown, though plaintiffs allege that he suffered severe permanent injuries.

*Green I*, 203 N.C. App. at 262, 690 S.E.2d at 758-59. "There is no dispute that Mr. Green was immediately disabled by his injuries." *Green II*, ___ N.C. App at ___, 719 S.E.2d at 139.

### B.  Procedural History

On 22 May 2008, Ms. Crudup was appointed to serve as Mr. Green's guardian *ad Litem*. On the same date, Plaintiffs filed a complaint against Defendants Wade R. Kearney, II; Paul Kilmer; Katherine Lamell; Pamela Hayes; Ronnie Wood; Philip Grissom, Jr.; Dr. J.B. Perdue, both individually and in his official capacity as Medical Examiner for Franklin County; Louisburg Rescue and Emergency Medical Service, Inc.; Franklin County Emergency Medical Service, Inc.; Epsom Fire and Rescue Association, Inc.; and Franklin County, North Carolina. In the complaint, Mr. Green asserted negligence claims and Ms. Kelly and Mr. Alston asserted negligent infliction of emotional distress claims against all Defendants.

At different times and in different ways, each of Plaintiffs' claims was resolved. On 6 July 2009, a settlement between Plaintiffs and Defendants Franklin County EMS, Mr. Kilmer, Ms. Lamell, and Franklin County received judicial approval. On 12 March 2009, a dismissal motion filed by Defendants Epsom Fire and Rescue Association, Inc., and Philip Grissom, Jr., was granted. On 23 July 2008, Dr. Perdue filed a motion to dismiss the claims that had been asserted against him on the grounds that he was immune from suit. The trial court denied Dr. Perdue's motion on 12 March 2009, a decision from which Dr. Perdue noted an appeal to this Court. On 6 April 2010, this Court issued an opinion reversing the denial of Dr. Perdue's dismissal motion on the grounds that Dr. Perdue was entitled to rely on a defense of sovereign immunity with respect to any claim filed against him in his official capacity and that Plaintiffs' complaint did not adequately assert a claim against Dr. Perdue in his individual capacity. *Green I*, 203 N.C. App. at 275, 690 S.E.2d at 766.

On 29 July 2008 and 1 August 2008, the remaining Defendants, Mr. Kearney, Ms. Hayes, Mr. Wood, and Louisburg Emergency Medical Services, a group which will be referred to collectively throughout

the remainder of this opinion as "Defendants," sought dismissal of Plaintiffs' complaint. On 9 December 2008, Defendants filed answers denying the material allegations of Plaintiffs' complaint, asserting various defenses, and reiterating their request for dismissal of Plaintiffs' complaint. On 1 December 2008 and 30 December 2008, Defendants' dismissal motions were denied. On 3 February 2009, Defendants moved for partial summary judgment with respect to the negligent infliction of emotional distress claims asserted by Mr. Alston and Ms. Kelly, which were the only claims underlying their requests for relief. On 12 March 2009, orders granting summary judgment in favor of Defendants with respect to these negligent infliction of emotional distress claims were entered. Plaintiffs never sought appellate review of the orders granting summary judgment in Defendants' favor with respect to these claims.

On 25 March 2009, an order was entered directing that "all matters in this legal proceeding [be] stayed pending the final opinion in Defendant Perdue's appeal to the North Carolina Court of Appeals." On 6 April 2010, this Court filed its opinion holding that Dr. Perdue's dismissal motion should have been granted. *Green I*, 203 N.C. App. at 275, 690 S.E.2d at 766. On 15 and 16 November 2010, Defendants moved for summary judgment in their favor with respect to Plaintiffs' remaining claim. On 20 December 2010, orders granting Defendants' motion were entered.

On 28 December 2010, Defendants filed a motion seeking an award of costs. On 10 January 2011, Plaintiffs noted an appeal from the order granting summary judgment with respect to their remaining claim against Defendants. On 15 November 2011, this Court filed an opinion in *Green II* affirming the entry of summary judgment in favor of Defendants. *Green II*, ___ N.C. App. at ___, 719 S.E.2d at 146. Pursuant to N.C. R. App. P. 31 and 32, the time within which Plaintiffs were allowed to seek discretionary review of our decision in *Green II* expired on 20 December 2011. On 3 January 2012, Defendants filed a supplemental motion for the assessment of costs. After holding a hearing with respect to Defendants' motion on 30 January 2012, the trial court entered an order on 8 February 2012 taxing costs against Plaintiffs and in favor of Defendants Ms. Hayes, Mr. Wood and Louisburg EMS in the amount of $12,030.15 and taxing costs against Plaintiffs and in favor of Defendant Mr. Kearney in the amount of $8,327.36. Plaintiffs noted an appeal to this Court from the trial court's order.

GREEN v. KEARNY

[225 N.C. App. 281 (2013)]

## II. Legal Analysis

### A. Standard of Review

" 'The simple but definitive statement of the rule is: costs in this State, are entirely creatures of legislation, and without this they do not exist.' " *Belk v. Belk*, ___ N.C. App ___, ___, 728 S.E.2d 356, 363 (2012) (quoting *City of Charlotte v. McNeely*, 281 N.C. 684, 691, 190 S.E.2d 179, 185 (1972) (internal citation omitted). "Whether a trial court has properly interpreted the statutory framework applicable to costs is a question of law reviewed *de novo* on appeal. The reasonableness and necessity of costs is reviewed for abuse of discretion." *Peters v. Pennington*, ___ N.C. App. ___, ___, 707 S.E.2d 724, 741 (2011) (citing *Jarrell v. Charlotte-Mecklenburg Hosp. Auth.*, 206 N.C. App. 559, 561, 698 S.E.2d 190, 191 (2010)).

In challenging the trial court's order, Plaintiffs have not argued that the trial court abused its discretion in establishing the amount of costs to be assessed against them or contended that the trial court lacked the authority to assess the types of costs claimed by Defendants. Instead, Plaintiffs assert that the trial court lacked the authority to tax costs against Mr. Alston and Ms. Kelly to the extent that Defendants incurred those costs after summary judgment had been entered in favor of Defendants with respect to their negligent infliction of emotional distress claims, that the trial court's decision to hold Mr. Alston and Ms. Kelly liable for costs incurred after summary judgment had been entered in favor of Defendants with respect to their negligent infliction of emotional distress claims contravened North Carolina public policy, that Defendants failed to seek to have costs taxed against Plaintiffs in a timely manner, and that the trial court erroneously taxed costs against Ms. Crudup. As a result of the fact that the questions raised by Plaintiffs all involve questions of law, we review Plaintiffs' challenges to the trial court's order using a *de novo* standard of review.

### B. Taxing Costs Against Ms. Kelly and Mr. Alston

[1] As an initial matter, Plaintiffs argue that, after the trial court entered summary judgment in Defendants' favor with respect to their negligent infliction of emotional distress claim, Mr. Alston and Ms. Kelly were no longer parties to this case, a fact which deprived the trial court of the right to tax costs incurred after the entry of the summary judgment order against them. We do not find Plaintiffs' argument persuasive.

Admittedly, "the party cast in the suit is the one upon whom the costs must fall." *Nichols v. Goldston*, 231 N.C. 581, 584, 58 S.E.2d 348, 351 (1950) (citing N.C. Gen. Stat. § 6-1 and *Ritchie v. Ritchie*, 192 N.C. 538, 541, 135 S.E. 458, 459 (1926)). However, Plaintiffs' assumption that Mr. Alston and Ms. Kelly were not parties after the entry of the summary judgment order is contrary to the explicit language of N.C. Gen. Stat. § 1A-1, Rule 54(b), which provides, in pertinent part, that:

> When more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes. In the absence of entry of such a final judgment, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and . . . in the absence of entry of such a final judgment, any order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(emphasis added). As a result, N. C. Gen. Stat. § 1A-1, Rule 54(b) directly states that when, as in this case, the trial court has not certified an order granting summary judgment with respect to fewer than all claims or all parties for immediate appellate review, the order in question does not "terminate the action as to any of the . . . parties." Moreover, " 'in the absence of entry of such a final judgment, any order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.' " *Bumpers v. Cmty. Bank of N. Va.*, 364 N.C. 195, 199, 695 S.E.2d 442, 445 (2010) (quoting Rule 54(b)). "Although the primary purpose of [N.C. Gen. Stat. § 1A-1, Rule 54(b)] is to preserve the right of a party to appeal from a final judgment, [N.C. Gen. Stat. § 1A-1,] Rule 54(b) unmistakably defines the effect of a nonfinal order on the status of parties in a multi-party case" and compels the conclusion "that [Mr. Alston and Ms. Kelly] remained [] parties to the case subsequent to the Court's nonfinal [partial summary judgment] order." *Dooley v. United Technologies Corp.*, 152

F.R.D. 419, 424 (D.D.C. 1993). Thus, since Mr. Alston and Ms. Kelly "never requested the [trial] court to issue a final judgment as to [them]," "under the plain language of Rule 54(b), [they] remained [] part[ies] to the action," *Knox v. Lederle Labs*, 4 F.3d 875, 878 (10th Cir. 1993)[1], and remained liable for costs incurred throughout the pendency of this case.[2]

Although our dissenting colleague acknowledges that Mr. Alston and Ms. Kelly "technically remained parties to the lawsuit following the dismissal of 12 March 2009," he concludes that, "[i]n the absence of evidence that Mr. Alston and Ms. Kelly actively participated in the litigation after 12 March 2009, they should not have been assessed with any of defendants' costs incurred after that date." Aside from the fact that the adoption of such a legal principle would be inconsistent with the literal language of N.C. Gen. Stat. § 1A-1, Rule 54, the use of such an approach would require implementation of a new and undefined standard requiring the trial and appellate courts to determine whether there is "evidence that [a party] actively participated in the litigation" after the dismissal of his claim in determining liability for costs. As a result, the difficulties inherent in the method of analysis that Plaintiffs appear to advocate and that our dissenting colleague supports provides additional justification for our decision to refrain from overturning the trial court's decision to impose costs upon Mr. Alston and Ms. Kelly.

Our dissenting colleague also notes Defendants' "suggest[ion of] four specific acts that Mr. Alston and Ms. Kelly could have performed so as to not incur liability for court costs after their claims were dismissed," including taking a voluntary dismissal, with prejudice, after the entry of the order granting summary judgment in Defendants' favor with respect to their negligent infliction of emotional distress claims or seeking to have the summary judgment order certified as final pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b). Although our col-

---

1. As our dissenting colleague notes, the facts at issue in *Knox* are very different from those present here. However, we believe that the basic principle set out in *Knox* as described in the text of this opinion is directly relevant to the proper resolution of this case.

2. In their brief, Plaintiffs argue that neither Mr. Alston nor Ms. Kelly had any intention of appealing or seeking reconsideration of the order granting summary judgment in Defendants' favor with respect to their negligent infliction of emotional distress claims and that this fact should suffice to render the summary judgment order final for cost-related purposes. We are unwilling to allow a party's right to seek and obtain recovery of costs to hinge on the subjective intentions of the party being held liable for costs, particularly given the crystal clear language of N.C. Gen. Stat. § 1A-1, Rule 54(b).

league characterizes the first of these two suggestions as "nonsensical," the taking of such a dismissal with prejudice would have explicitly indicated that Mr. Alston and Ms. Kelly no longer had party status in this case. Similarly, although our dissenting colleague appears to assume that a certification of the order granting summary judgment in Defendants' favor with respect to the negligent infliction of emotional distress claims asserted by Mr. Alston and Ms. Kelly would inevitably lead Plaintiffs to take a disfavored interlocutory appeal to this Court, nothing in N.C. Gen. Stat. § 1A-1, Rule 54(b) requires (as compared to allows) a party to take an interlocutory appeal from a certified order. As a result, we are not persuaded by our dissenting colleague's rejection of certain of the suggestions advanced by Defendants concerning the steps that Mr. Alston and Ms. Kelly might have taken to avoid cost liability of the nature at issue here.

The trial court's decision to allow the imposition of liability for costs upon parties against whom summary judgment was granted long before the entry of a judgment finally resolving all claims brought by all plaintiffs against all defendants may seem, at first glance, to be anomalous. However, given the literal language of N.C. Gen. Stat. § 1A-1, Rule 54(b), which explicitly provides that the entry of an interlocutory order like the one at issue here does "not terminate the action as to any of the claims or parties" involved, absent a certification of finality, and given the fact that the trial court retained the authority under N.C. Gen. Stat. § 1A-1, Rule 54(b) to revise, or even to reverse, such an interlocutory order until the entry of a final judgment, we are compelled to hold that the trial court did not commit an error of law by taxing costs incurred after the entry of an order granting summary judgment in Defendants' favor with respect to the negligent infliction of emotional distress claims asserted against them by Mr. Alston and Ms. Kelly against all Plaintiffs.

### C. Public Policy Concerns

[2]  Secondly, Plaintiffs argue that a decision to affirm the trial court's order would be contrary to the public policy of encouraging settlements, in that "settling parties or those otherwise dismissed from an action in the early stages of a case, would have no way of knowing until the final disposition of the case as to all parties whether or not they would be liable for costs incurred after their dismissal from the action." Once again, we conclude that Plaintiffs' argument is not persuasive.

In seeking to convince us of the merits of this argument, Plaintiffs have not asserted that they entered into a settlement or that any rights that they might have had as "settling parties" have been violated. Instead, Plaintiffs appear to be urging us to consider the rights of a hypothetical set of parties who, after having settled, are taxed with costs incurred after the settlement of their claims. "As this Court has previously pointed out, it is not a proper function of courts 'to give advisory opinions, or to answer moot questions[.]' " *Martin v. Piedmont Asphalt & Paving*, 337 N.C. 785, 788, 448 S.E.2d 380, 382 (quoting *Adams v. Dept. of N.E.R.*, 295 N.C. 683, 704, 249 S.E.2d 402, 414 (1978)) (internal citation omitted). Moreover, "it is the function of the General Assembly to establish the public policy of this State." *Walter v. Vance County*, 90 N.C. App. 636, 641, 369 S.E.2d 631, 634 (1988) (citing *Martin v. Housing Corp.*, 277 N.C. 29, 175 S.E.2d 665 (1970)). In view of the fact that the General Assembly has, as we have noted above, adopted statutory language providing that persons in the position of Mr. Alston and Ms. Kelly remain parties to the underlying litigation until all claims have been finally resolved, we have no basis for concluding that the trial court's order has any adverse public policy ramifications. Finally, despite Plaintiffs' expression of concern that a party might remain liable for costs even after dismissing its claims, we note that Plaintiffs never dismissed their claims or took any other action that had the effect of rendering final the trial court's order granting summary judgment in favor of Defendants with respect to the negligent infliction of emotional distress claims. As a result, given that Plaintiffs' argument rests on facts that have no bearing on this case and would require us to ignore public policy decisions made by the General Assembly, we conclude that Plaintiffs are not entitled to relief on the basis of this argument.

### D. Timeliness

[3] Thirdly, Plaintiffs argue that Defendants' motion for costs was "untimely." This argument lacks merit.

In seeking to persuade us to accept their timeliness argument, Plaintiffs assert that "[o]ur Courts have held that, if a Motion for Costs is not filed within a reasonable time after the 'results were known', it is untimely filed and will be time-barred." As support for this contention, Plaintiffs cite *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 525 S.E.2d 481 (2000), in which this Court stated that:

> Plaintiff first contends defendants' claim for attorneys'
> fees was time-barred. Citing F.R. Civ. P. 54(d)(2)(B)

> requiring motions for attorneys' fees to be filed within fourteen days following the entry of judgment, plaintiff argues we should apply a "rule of reasonableness" and find that it was violated by the "unreasonable and prejudicial" two year time period between the partial summary judgment order and the attorneys' fee motions. The fourteen day rule contained in F.R. Civ. P. 54(d)(2)(B) clearly does not apply to litigation pending in our State courts and the North Carolina Rules of Civil Procedure contain neither a counterpart to F.R. Civ. P. 54(d)(2)(B) nor a deadline for filing a motion for costs and fees. Rather, "the usual practice in awarding attorneys' fees is to make the award at the end of the litigation when all the work has been done and all the results are known." . . . [T]he litigation was ended on 8 July 1998 when plaintiff's petition for discretionary review was denied by the North Carolina Supreme Court. Dillard's amended motion for costs was filed 14 September 1998, and the Town's motion for costs was filed 10 August 1998, both within a reasonable time after the "results were known." We hold the motions for costs were not time-barred.

*Okwara*, 136 N.C. App at 592, 525 S.E.2d at 485 (quoting *Baxter v. Jones*, 283 N.C. 327, 331, 196 S.E.2d 193, 196 (1973)). Similarly, the present "litigation [] ended" when Plaintiff's opportunity to seek discretionary review of our decision in *Green II* expired on 20 December 2011. As a result of the fact that Defendants' supplemental motion for costs was filed on 3 January 2012 and the fact that the interval between the date upon which the litigation of this case ended and the filing of Defendants' supplemental motion was substantially shorter than the comparable period of time at issue in *Okwara*, we conclude that the trial court correctly declined to reject Defendants' efforts to have costs taxed against Plaintiffs on timeliness grounds.

### E. Taxation of Costs Against Ms. Crudup

[4] Finally, Plaintiffs argue that, to the extent that the trial court taxed costs against Mr. Green's guardian *ad Litem*, it erred in doing so. As we read its order, however, the trial court determined that costs "are hereby taxed against Plaintiffs," a group which consists of Mr. Green, Ms. Kelly, and Mr. Alston. As Plaintiffs candidly concede, Defendants did not seek to have costs assessed against Ms. Crudup, and nothing in the trial court's order suggests that it did so. As a

GREEN v. KEARNY

[225 N.C. App. 281 (2013)]

result, we conclude that the trial court did not tax costs against Ms. Crudup, making it unnecessary for us to consider Plaintiffs' contentions with respect to this issue.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court did not err by taxing costs against Mr. Alston and Ms. Kelly or by taxing costs against Ms. Crudup. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Chief Judge MARTIN concurs.

Judge STEELMAN concurs in part and dissents in part by separate opinion.

STEELMAN, Judge, concurring in part and dissenting in part.

I concur with the majority opinion on the issues of the timeliness of defendant's motion seeking costs, and that the costs were taxed against Ms. Crudup only in her capacity as guardian *ad litem*. I must respectfully dissent as to the majority's holding that Mr. Alston and Ms. Kelly can be held liable for costs incurred after they were dismissed from the lawsuit.

As explained in the majority opinion, this case has a long and tortured procedural history going back to 2007, when the original complaint was filed. The current action, filed in 2008, contained multiple claims, by multiple plaintiffs, against multiple defendants, based upon multiple legal theories. These claims were resolved either by settlement or dismissal by the trial court over the next two years. On 12 March 2009, the claims of Mr. Alston and Ms. Kelly were dismissed by the trial court, with prejudice. These orders were not appealed by Mr. Alston and Ms. Kelly. The claims of the other plaintiffs were finally resolved by this court in *Green v. Kearney*, ___ N.C. App. ___, 719 S.E.2d 137 (2011). Neither Mr. Alston nor Ms. Kelly was a party to that appeal.

The issue presented is a narrow one: whether Mr. Alston and Ms. Kelly can be taxed with court costs incurred by defendants after their claims were dismissed, with prejudice, on 12 March 2009. The majority holds that since under the provisions of N.C.R. Civ. P. 54(b) Mr.

Alston and Ms. Kelly remained parties to the action until all of the claims of all of the parties were resolved, they are liable for all costs incurred by the defendants.

In support of this proposition, the majority cites the case of *Knox v. Lederle Labs*, 4 F.3d 875, 878 (10th Cir. 1993). *Knox* was not a case dealing with the assessment of court costs, but rather was a *res judicata* case. Wyeth Labs moved for summary judgment in a prior action instituted by the plaintiff, and that motion was granted. Subsequently, plaintiffs dismissed their first action, without prejudice. A second action was later instituted. When plaintiffs rejoined Wyeth as a defendant in the second suit, Wyeth pled the prior summary judgment order in bar of plaintiffs' claims.

The Tenth Circuit Court of Appeals held that since at the time of entry of summary judgment in favor of Wyeth in the first suit, not all of the claims were resolved, Wyeth remained a party to the action. "Wyeth never requested the district court to issue a final judgment as to it. Therefore, under the plain language of Rule 54(b), Wyeth remained a party to the action when Plaintiffs sought to dismiss without prejudice." *Knox*, 4 F.3d at 878.

A federal statute permitted plaintiffs to withdraw their action for vaccine-related injury or death, and to file a petition under the National Childhood Vaccine Injury Compensation Act. 42 U.S.C. § 300aa-11. The Tenth Circuit held that since Wyeth remained a party to the action, the dismissal without prejudice controlled, and allowed them to be a party to the second action.

Explicit in the holdings of *Knox* and the majority opinion in the instant case is that it was incumbent upon Mr. Alston and Ms. Kelly to take some affirmative action following their dismissal from the lawsuit in order to stop the subsequent costs of defendants from being assessed against them. *Knox* states that this affirmative action would be to seek a "final judgment." I have reviewed the provisions of the North Carolina Rules of Civil Procedure, and can locate no provision where a plaintiff can request a "final judgment" where the trial court has already dismissed all of their claims, with prejudice.

In their brief, defendants suggest four specific acts that Mr. Alston and Ms. Kelly could have performed so as to not incur liability for court costs after their claims were dismissed: (1) do not file the lawsuit in the first place; (2) dismiss their lawsuit after discovery revealed the lack of merit of their claims; (3) voluntarily dismiss their claims after the trial court had dismissed them, with prejudice; or

(4) seek a certification from the trial court under North Carolina Rule of Civil Procedure 54(b), and undertake an interlocutory appeal as to the dismissal of their claims. I do not find suggestions (1) and (2) to be helpful, since the issue only arises upon the dismissal of claims by the trial court. Suggestion (3) appears to be nonsensical. The dismissal of claims after they have already been dismissed, with prejudice, would be a fruitless act.

As to suggestion (4), this State has long had a policy of discouraging the piecemeal, interlocutory appeals.

> General Statutes 1-277 and 7A-27 in effect provide "that no appeal lies to an appellate court from an interlocutory order or ruling of the trial judge unless such ruling or order deprives the appellant of a substantial right which he would lose if the ruling or order is not reviewed before final judgment." *Consumers Power v. Power Co.*, 285 N.C. 434, 437, 206 S.E.2d 178, 181 (1974); accord, *Funderburk v. Justice*, 25 N.C. App. 655, 214 S.E.2d 310 (1975). An order is interlocutory "if it does not determine the issues but directs some further proceeding preliminary to final decree." *Greene v. Laboratories, Inc.*, 254 N.C. 680, 693, 120 S.E.2d 82, 91 (1961). The reason for these rules is to prevent fragmentary, premature and unnecessary appeals by permitting the trial divisions to have done with a case fully and finally before it is presented to the appellate division. "Appellate procedure is designed to eliminate the unnecessary delay and expense of repeated fragmentary appeals, and to present the whole case for determination in a single appeal from the final judgment." *Raleigh v. Edwards*, 234 N.C. 528, 529, 67 S.E.2d 669, 671 (1951).

*Waters v. Personnel, Inc.*, 294 N.C. 200, 207-08, 240 S.E.2d 338, 343 (1978) (footnotes omitted).

To require a losing party in a multiple-party, multiple-claim case to seek an interlocutory appeal in order to prevent it from being taxed with court costs incurred by the prevailing party subsequent to the dismissal flies in the face of the above-stated policy. It would in effect mandate that the risk of being taxed with future costs is a substantial right, meriting an interlocutory appeal under N.C. Gen. Stat. §§ 1-277 and 7A-27(d). I believe this to be contrary to the statutes and case law of North Carolina.

HANDY SANITARY DIST. v. BADIN SHORES RESORT OWNERS ASS'N, INC.

[225 N.C. App. 296 (2013)]

I would hold that even though Mr. Alston and Ms. Kelly techni-cally remained parties to the lawsuit following the dismissal of 12 March 2009, the dismissal became final when they elected not to appeal that ruling at the time that the other plaintiffs appealed the dismissal of their claims in January of 2011. In the absence of evi-dence that Mr. Alston and Ms. Kelly actively participated in the litigation after 12 March 2009, they should not have been assessed with any of defendants' costs incurred after that date.

The order of 12 March 2009, was an interlocutory order, and Mr. Alston and Ms. Kelly had the right to wait and see how the remainder of the claims were resolved before making a final decision on whether to appeal the dismissal. They should not be taxed with costs incurred after the dismissal in the absence of evidence showing that the subsequently incurred costs were attributable to their conduct.

I would hold that the trial court erred in assessing court costs against Mr. Alston and Ms. Kelly which accrued after the date of the dismissal with prejudice, 12 March 2009.